**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| JAVIER BRAVO, SR.; HOPE BRAVO; E. B., a minor by her Guardian ad Litem Sara Gonzales, <br><br>      Plaintiffs - Appellees/ Cross-Appellants, <br><br> v. <br><br> CITY OF SANTA MARIA; LOUIS TANORE, Santa Maria Police Detective; LARRY RALSTON, Santa Maria Police Lieutenant, <br><br>      Defendants - Appellants/ Cross-Appellees. | Nos. 14-55557 and 14-55687 <br><br> D.C. No. 2:06-cv-06851-FMO-SH <br><br> MEMORANDUM [*] |

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted October 28, 2015
Pasadena, California

Before: REINHARDT, HAWKINS, and M. SMITH, Circuit Judges.

---

    [*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendants the City of Santa Maria ("City") and Louis Tanore and Larry Ralston of the Santa Maria Police Department ("SMPD") and Plaintiffs Javier Bravo, Sr., his wife Hope, and their granddaughter E.B. (collectively, "the Bravos") cross-appeal a number of issues decided by the district court after a jury found Defendants liable for violating the Bravos' constitutional rights. The attorney fees and costs issues are discussed in a separate opinion filed contemporaneously. We address each of the remaining issues in turn.

## 1. Tanore's Individual Liability

There was sufficient evidence that Tanore acted intentionally or recklessly. *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) (material omissions must be made "intentionally or with reckless disregard for the truth"). While the evidence presented to the jury could have supported a finding that Tanore was merely negligent, it did not compel such a finding. From Tanore's testimony that he reviewed Javier Jr.'s rap sheet and included information from the rap sheet about Javier Jr.'s prior stolen-property offense in the affidavit supporting the warrant application, and from the fact that the information about the two-year sentence appears only two lines below the stolen-property charge, the jury could reasonably have concluded that Tanore saw and understood the sentencing information, and thus, either intentionally or recklessly omitted it from the affidavit. Accordingly, we affirm

2

the district court's denial of judgment as a matter of law. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) ("A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.").

**2.  Ralston's Individual Liability**

Section 1983 suits do not allow for vicarious liability for supervisors. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). An individual can be held liable only if he personally participated in the deprivation of the plaintiff's constitutional rights or if he set in motion acts that he knew or should have known would cause others to inflict the constitutional injury. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012). Common theories of supervisorial liability include failure to train, supervise, or control one's subordinates or ratification of the constitutional deprivation. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007). "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if [he] were directly to deprive the third party of his constitutional rights." *Lacey*, 693 F.3d at 916.

The district court's determination that Ralston could be held liable for the material omission from the warrant affidavit because he reviewed it before it was

3

submitted to the magistrate judge is unpersuasive because, although the affidavit listed Javier Jr.'s stolen property conviction, the affidavit did not state that Javier Jr. had recently been sentenced to two years' imprisonment for it. Because Ralston could not have foreseen that the warrant affidavit was missing material information when he reviewed it, the jury could not reasonably have found that he participated in the deprivation of the Bravos' constitutional rights. *See Lacey*, 693 F.3d at 915.

Nevertheless, we affirm the district court's judgment because the record supports a finding that Ralston unreasonably failed to train or supervise his subordinates on checking a target's custody status. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 842 (9th Cir. 2004) ("We may affirm the district court on any ground supported by the record." (quoting *Dixon v. Wallowa Cty.*, 336 F.3d 1013, 1018 (9th Cir. 2003))). Ralston testified that the direct way of verifying state custody status was by contacting state authorities, that he understood at the time of the investigation that county jail officials did not have information as to who was currently serving their time in state prison, and yet, Ralston did not ensure the officers contacted state authorities to check targets' state custody status. As the possibility of material omissions of state custody status from warrant affidavits was reasonably foreseeable, the jury could have reasonably concluded that Ralston acted with reckless disregard toward the risks of his inaction, the required mental state to establish

4

liability for judicial deception. *See Castro v. Cty. of L.A.*, 797 F.3d 654, 667 (9th Cir. 2015); *Lacey*, 693 F.3d at 916.

While contrary conclusions—that Ralston did not view the current practice as deficient or merely acted negligently—are plausible, they are not compelled by the evidence. Drawing all reasonable inferences in the Bravos' favor, we affirm the district court's denial of the motion for judgment as a matter of law.

3.      **Macagni's Individual Liability**

The district court correctly noted that the record contains almost nothing showing that Macagni was involved in the investigation or that he approved of his subordinates' actions. "Mere failure to discipline . . . does not amount to ratification . . . ." *See Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *reversed in part on other grounds*, 135 S. Ct. 1765 (2015). Thus, Macagni cannot be held liable based on a personal participation or a ratification theory.[1]

Unlike with Ralston, there is insufficient evidence to support a failure-to-train theory of liability for Macagni because, although Ralston testified that the custody-

---

[1] The cases cited by the Bravos are distinguishable. Both *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), and *Watkins v. City of Oakland*, 145 F.3d 1087, 1093-94 (9th Cir. 1998), premised ratification on a police chief's literal endorsement of the dismissal of complaints against a police officer. Unlike the chiefs in *Watkins* and *Larez*, Macagni did not sign anything that indicated his approval, nor did he otherwise express support for the conduct. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1253-54 (9th Cir. 2010).

check practice was widespread and long-standing, there is no evidence of how long Macagni worked at the SMPD, what Macagni understood the custody-check practice to be, or whether he foresaw or should have foreseen potential problems with it before the entry into the Bravos' home. Thus, we affirm the district court's grant of judgment as a matter of law to Macagni.

**4.    Municipal Liability**

The jury found the City liable because it ratified its officers' actions and because it maintained a custom or practice that violated the Bravos' constitutional rights. Defendants attack the jury's municipal liability verdict on the ground that insufficient evidence supported the ratification theory and the district court misinstructed the jury on the custom-or-practice theory. As discussed above, there is virtually no evidence of ratification. Thus, whether the jury's verdict can stand depends on the custom-or-practice theory.

Defendants contend that the court should have instructed the jury that they had to find the City deliberately indifferent in order to find the City liable for a policy of inaction. While a plaintiff must prove deliberate indifference to establish municipal liability for a failure to train officers, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), and a policy of inaction resulting in harm, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143-44 (9th Cir. 2012), he need not make such a showing to prevail on

a claim that a policy or practice of action caused the harm, *see generally Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185-87, 1194 (9th Cir. 2002) (discussing action and omission routes to municipal liability). "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (quoting *Tsao*, 698 F.3d at 1143).

In this case, the problem with the City's policy was that it directed officers to rely on the county jail to provide information about both county and state custody (and only to follow up with state authorities if the county jail indicated that the person had been transferred to state custody), rather than always checking with both county and state officials in the first instance. One could frame this policy as one of inaction, as the issue in this case was that officers did not call the state authorities. However, we conclude that the policy at issue in this case was a policy of action because the problem was not that the City had no policy in place regarding checking state custody status. Rather, the problem was that the City affirmatively had officers call the wrong agency and rely on the wrong agency to check state custody status. In that sense, this policy was more similar to the policy of action in *Gibson*, of requiring staff to wait to conduct a mental health evaluation when a new detainee was acting out, than the

7

policy of inaction in *Gibson*, failing to instruct a nurse to help a new detainee get mental health treatment if she determined from the new detainee's medications (given to her for safekeeping) that he needed treatment. 290 F.3d at 1189, 1195-96. Accordingly, the district court did not err in not instructing the jury on deliberate indifference in connection with the custom-or-practice theory of municipal liability.

**5.  Compensatory Damages for Hope Bravo and E.B.**

The Bravos waived this issue by not objecting before the jury was discharged. *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010); *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 806 (9th Cir. 1984). Even if they had not waived it, the record supports a finding that Hope's and E.B.'s emotional distress was too minor to constitute actual harm, such that it was appropriate to award only nominal damages.

**6.  New Trial on Damages for Javier Sr.**

The district court properly instructed the jury on the issue of superseding causes. Plaintiffs' contention that there was no evidence to support the second, third, and fourth elements of the instruction, is not supported by the record. With respect to the second element, the City of Santa Barbara's no-knock entry could reasonably be considered to be highly unusual or extraordinary as it was not permitted by law. As to the third element, record evidence suggests that Santa Maria did not instruct the Santa Barbara officers to engage in this impermissible tactic. Plaintiffs do not point

8

to anything in the record that shows that Defendants knew or expected Santa Barbara's officers to enter without knocking, even if they did anticipate that it might take a SWAT team to enter Javier Jr.'s home. Lastly, with respect to the fourth element, it was not an abuse of discretion for the court to conclude that the type of harm resulting from the no-knock entrance was different from the kind of harm that could have reasonably been expected from Defendants' conduct. Had Santa Barbara executed the entry in a permissible fashion, the injuries the Bravos alleged might not have occurred at all. Thus, the instruction was sufficiently supported by the record, and we affirm the district court's denial of a new trial on damages.

**AFFIRMED. Each party shall bear its own costs on appeal.**