United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2006

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
### for the Fifth Circuit

---

m 05-30958

---

EPCO CARBON DIOXIDE PRODUCTS, INC.,

Plaintiff-Appellant,

VERSUS

JP MORGAN CHASE BANK, NA,
FORMERLY KNOWN AS BANK ONE, NA,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Louisiana
m 3:04-CV-2324

---

Before JONES, Chief Judge, and
 SMITH and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

EPCO Carbon Dioxide Products, Inc. ("EPCO"), appeals the dismissal of its breach of contract, abuse of rights, and bad faith claims against JP Morgan Chase Bank, NA ("Chase"). Because EPCO's complaint pleads sufficient allegations to state a claim on which relief can be granted, we reverse and remand.

I.

Because this case was resolved on motion to dismiss, the allegations in the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Lowery v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The facts discussed below utilize that standard.

A.

EPCO, a liquid carbon dioxide producer, acquires sites and manufacturing equipment

for its production process through financing from banking institutions. Chase provided financing for three EPCO facilities, most recently EPCO's Eddyville, Iowa, facility.

In December 2002, EPCO and Chase made a financing agreement for the Eddyville facility, providing for a "lower floater" corporate note financing structure by which Chase would issue an irrevocable direct pay letter of credit for $3,350,000 that would support floating-rate option notes issued by EPCO.[1] EPCO also executed Security Agreements in which it granted Chase a security interest in various collateral relating to the Eddyville facility. Some financing documents contemplated a subsequent issuance of notes up to an aggregate amount of $7 million relating to the acquisition of future projects, including a facility in Monroe, Wisconsin.

In February 2003, Chase requested that EPCO grant a security interest in additional collateral in connection with discussions regarding the $7 million loan package. EPCO informed Chase that its plans for additional projects, including the Monroe facility, were on hold and that it would not provide additional collateral. Chase, however, insisted on the additional collateral.

In March 2003, Chase informed EPCO that it wished to terminate the banking relationship

---

[1] "Lower Floater" financing is a security structure in which notes are underwritten and sold in the public finance market to investors who will rely on the letter of credit as a source of repayment. The trustee of the letter of credit, Chase, will make payments to the holders of the notes and can then seek reimbursement from the debtor, EPCO, pursuant to the terms of a Reimbursement Agreement signed by the parties.

and did not intend to renew the letters of credit on two EPCO facilities. Chase was aware that a failure to renew letters of credit for these facilities would cause defaults on the bonds for those facilities as well as cross-defaults with other lenders.

EPCO received a letter from Chase indicating that the only circumstance in which Chase would renew the letters of credit was if EPCO entered into a forbearance agreement in which EPCO would admit certain technical defaults, provide additional collateral, and pay additional fees and higher interest rates. EPCO signed that agreement.

Following a few additional months of negotiations, in May 2004 Chase made a written offer by letter to EPCO to restructure the indebtedness associated with EPCO's facilities and extend the Eddyville letter of credit through December 1, 2005. EPCO accepted that offer on the terms set forth by Chase. Notwithstanding EPCO's acceptance, Chase failed to comply with the terms of the May 2004 agreement and has made repeated threats to put EPCO in default and impose even more onerous conditions.

In September 2004 Chase informed EPCO that it would not renew the letter of credit unless EPCO paid increased fees to Chase, and paid all attorney fees incurred by Chase during the negotiations since March 2003. Should Chase fail to renew the letters of credit, EPCO will suffer significant financial losses and irreparable damage to its reputation.

B.

EPCO sued Chase in state court seeking specific performance of the May 2004 agreement, damages for breach of contract and abuse of rights, and an injunction to prevent

2

Chase from failing to renew the letters of credit. Chase removed the case to federal court based on diversity of citizenship and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Chase's principal contention in its motion to dismiss was that all of EPCO's claims stem from an alleged breach of the May 2004 agreement. Under Louisiana's Credit Agreement Statute, all actions based on a credit agreement are barred unless the agreement is, *inter alia*, in writing and signed by the creditor and debtor. *See* LA. REV.STAT. 6:1121 *et seq.*; *Jesco Constr. Corp. v. Nationsbank Corp.*, 830 So. 2d 989, 991-992 (La. 2002). Because EPCO did not allege that the May 2004 agreement was in writing and signed by both parties, Chase claimed that EPCO's allegations were insufficient on their face to state a claim.

The magistrate judge, in his report and recommendation, concluded that to bring a claim for breach of a credit agreement, EPCO was required to plead either "the existence of a written agreement 'that is signed by the creditor and the debtor,'" or that "(1) EPCO accepted the offer by email, and (2) Chase agreed to conduct business by electronic means." *EPCO Carbondioxide Prods. v. JP Morgan Chase Bank, NA*, 2005 WL 1630096 (W.D. La. 2005). Because EPCO had failed to meet these pleading requirements, EPCO's "conclusory" allegation that it had "accepted the offer" was insufficient. *Id*. For the abuse of right claim, the magistrate judge concluded that EPCO was seeking to "create an *implied* agreement obligating Chase to renew the loans or letters of credit beyond their maturity dates," a cause of action precluded by the Louisiana Credit Agreement Statute and Louisiana jurisprudence. *Id.*

Although the magistrate judge based his decision solely on the pleadings, he included a footnote describing documents Chase had attached to its reply memorandum in support of the motion to dismiss. *Id.* In footnote 4 he discussed several email documents submitted by Chase that indicated that the May 2004 agreement required "execution of definitive documentation" to be accepted and that EPCO had initially rejected that offer by email. *Id.* The district court accepted the magistrate judge's recommendation, with the exception of footnote 4, and dismissed the claims.

II.

We review a dismissal under rule 12(b)(6) *de novo. See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 351 (5th Cir. 2003). We apply the same standard as does the district court: A claim will not be dismissed unless the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief. *Id.*

A.

The Louisiana Credit Agreement Statute operates as a "statute of frauds" for the credit industry. *King,* 885 So. 2d at 546. Actions brought by debtors based on credit agreements cannot be maintained unless "the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." LA. REV. STAT. § 6:1122 (2005). The purpose of the statute is "to prevent potential borrowers from bringing claims against lenders based upon oral agreements;" its effect is to bar "all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted." *Jesco*, 830 So. 2d at 992. The statute has also been held to reach actions based on implied agreements from a course of

3

dealings or a "previous business relationship." *King*, 885 So. 2d at 548.

Louisiana has also enacted the Uniform Electronic Transactions Act, LA. REV. STAT. § 9:2601 *et seq.* (2005). This statute allows an electronic signature to satisfy the signature requirement for most legal documents. LA. REV. STAT. § 9:2607. The Act applies only to transactions between parties who have "agreed to conduct transactions by electronic means." LA. REV. STAT. § 9:2605-(B)(1).

Taken together, these two statutes create a significant evidentiary burden for EPCO. Because it brings an action on a credit agreement, EPCO must prove, as an element of its claim, that there was a written credit agreement signed by both parties. If EPCO asserts that it submitted its signature electronically, it must prove that the parties agreed to conduct transactions by electronic means.

It is a well-known principle of federal law that federal procedure requires only notice pleading, "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] Although dismissal under rule

12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint.[3] The Statute of Frauds has traditionally been considered an affirmative defense. *See* FED. R. CIV. P. 8(c); *Automated Med. Lab., Inc. v. Armour Pharm. Co.*, 629 F.2d 1118 (5th Cir. 1980).

EPCO pleaded that a written offer was extended to EPCO by Chase on the date of the May 2004 agreement. EPCO also pleaded that it accepted this offer. Under the liberal notice-pleading standard of rule 8, this was a sufficient pleading to provide notice to Chase of the factual basis for EPCO's claim.[4]

Chase argues, and the magistrate judge agreed, that EPCO should be required to plead either that the May 2004 agreement was

---

[2] FED. R. CIV. P. 8(a)(2); *Hoshman v. Esso Stand. Oil Co.*, 263 F.2d 499, 501 (5th Cir. 1959). "A claimant does not have to set out in detail the facts on which the claim for relief is based, but must provide a statement sufficient to put the opposing party on notice of the claim." 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.04[1][a], at 8-22 (Matthew Bender 3d ed. 2006). Although in some statutory contexts state statutes have modified federal pleading requirements, *see id.*, this court has not construed the Louisiana Credit Agreement Statute as modifying the rule 8 standard. *Cf. In Re Dengel*, 340 F.3d
(continued...)

[2](...continued)
300, 312-14 (applying "no set of facts that would entitle him to relief" standard to review of a rule 12(b)(6) motion for dismissal based on the Louisiana Credit Agreement Statute). The traditional Fifth Circuit rule is that "a complaint is sufficient if it satisfies the Federal Rules, even though it would be subject to demurrer in a state court for failure to set forth facts sufficient to constitute a cause of action." *Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973). We see no reason to depart from this general rule in the instant context.

[3] 2 MOORE, *supra*, § 12.34[4][b], at 12-74 (citing *Kansa Reins. Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

[4] *See Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396, 398 (5th Cir. 2005) (describing the "low bar" set out by rule 8a with the example described as sufficient by form 9, "the simple statement, '[D]efendant negligently drove a motor vehicle against plaintiff . . . .'").

signed by the parties or that the parties agreed to transact by electronic means. This argument misunderstands the rule 8 requirement. "Parsing the allegations into elements has never been required."[5] EPCO's pleadings need not identify every element of its claim, particularly where the contested elements relate to the affirmative defense of the statute of frauds.

Although courts in this circuit have previously dismissed claims under rule 12(b)(6) in reliance on the Louisiana Credit Agreement Statute, in those cases the non-moving party either pleaded or conceded that its claim was based on an oral or unsigned agreement. *See Dengel*, 340 F.3d at 311-14; *Bonvillain v. U.S.*, 1999 WL 1072539, at *3 (E.D. La. 1999); *Whitney Nat'l Bank v. Stack*, 1991 WL 255376, at *1 (E.D. La. 1991). Instructive in this regard is the analysis in *Dengel*.

There, the plaintiff brought a third-party counterclaim against Bank One, alleging breach of a loan commitment. Although plaintiff did not plead a written, signed credit agreement in his counterclaim, we affirmed a summary judgment, relying on the fact that "the alleged credit agreement attached to the third party claim is not signed by Dengel and his wife as required by La. R.S. 6:1122." *Dengel*, 340 F.3d at 313.

EPCO has not conceded that its claim is based on an oral representation of Chase or on an unsigned agreement. Consistent with its pleadings, EPCO may be able to show that its acceptance was in the form necessary to satisfy the Credit Agreement Statute, either by submitting proof that its agreement with Chase was in a written, signed document or proof that it submitted its acceptance of Chase's offer electronically and that the two parties had agreed to conduct business electronically. Neither of these factual scenarios is foreclosed by the face of EPCO's pleadings, so dismissal at this early stage was improper.[6]

B.

Although we have the authority to grant judgment in favor of a party who did not move for summary judgment in the district court, we should do so only where "(1) there is no genuine issue of material fact and (2) the opposing party has had a full opportunity to (a) brief the legal issues and (b) develop a record." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 396 (5th Cir. 2006). Chase submitted additional evidentiary material through an affidavit attached to its reply memorandum in support of its motion to dismiss. EPCO did not have a chance to respond to that material or to challenge it by submitting contrary evidence.[7] We

---

[5] *Posey*, 415 F.2d at 396 n.5. "Indeed, the mere fact that allegations can be characterized as 'conclusional' will not, alone, suffice to make them insufficient." *Id.* at 397 n.6. "[T]he test is whether the complaint 'outline[s] or adumbrate[s]' a violation of the statute or constitutional provision on which the plaintiff relies . . . and connects the violation to the named defendants." 2 MOORE, *supra*, § 8.04[1][a], at 8-24 (quoting *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992)) (brackets and ellipses in original).

[6] We express no opinion as to the sufficiency of any additional showing that EPCO may be able to make or as to whether, in the event of an inadequate showing, EPCO would be subject to sanctions.

[7] In addition, the plain text of rule 56 creates a notice requirement for summary judgment. FED. R. CIV. P. 56(c) ("The motion shall be served at least 10 days before the time fixed for the hearing."). Although our circuit has not followed our sister circuits by implying a hearing requirement, *see*

(continued...)

therefore deem it prudent to remand these issues to the district court, which may require full briefing or receive additional evidence.

The summary judgment is REVERSED, and this matter is REMANDED for further proceedings.

---

[7](...continued)
*Jackson v. Widnall*, 99 F.3d 710, 713 (5th Cir. 1996), "if there is no hearing, the adverse party must have at least 10 days before the court makes a ruling to respond to the motion for summary judgment," 2 MOORE, *supra*, § 56.10[2][a], at 56-49.