# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 15, 2013

Lyle W. Cayce
Clerk

No. 12-50380
Summary Calendar

GLORIA MARTIN-JANSON,

Plaintiff-Appellant,

v.

JP MORGAN CHASE BANK, N.A.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-cv-00072

Before STEWART, Chief Judge, and OWEN, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Appellant Gloria Martin-Janson ("Martin-Janson") appeals the district court's dismissal of her claims for waiver and promissory estoppel arising from a foreclosure that Appellee JPMorgan Chase Bank, N.A. ("JPMorgan")[1] has

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] JPMorgan refers to itself as "JPMorgan," although the case caption spells the name with a space, "JP Morgan." We have retained the bank's spelling of its name throughout this opinion, except for the case caption.

No. 12-50380

commenced against her.  We AFFIRM IN PART and REVERSE AND REMAND IN PART.

## I.

"Because this case was resolved on motion to dismiss, the allegations in the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 467 (5th Cir. 2006) (citation omitted).  The facts discussed below utilize that standard.

## II.

In March 2007, Martin-Janson purchased her residence in Austin, Texas with a purchase-money mortgage.  Martin-Janson made timely payments under the loan until 2009, when both she and her husband became ill and missed two consecutive monthly payments.  As a result, Martin-Janson received a foreclosure notice.  She filed for bankruptcy in July 2009, which stayed the foreclosure proceedings.  Under the bankruptcy plan, Martin-Janson was required to continue making her monthly mortgage payments.  She made some of the monthly payments but not all of them.  In November 2009, JPMorgan requested that the bankruptcy court lift the automatic stay of foreclosure proceedings.  After Martin-Janson continued to miss payments on her loan, the bankruptcy court lifted the stay of foreclosure in May 2010.

Meanwhile, between July 2009 and February 2011, Martin-Janson was engaged in extensive communication with JPMorgan to modify her loan. During this time, JPMorgan representatives repeatedly assured her that she would receive a loan modification and that a modification was imminent.  JPMorgan also instructed Martin-Janson not to make monthly payments until the bank approved the modification, at which time her monthly payments would resume. She attempted to remit payment to JPMorgan on several occasions but the bank would not accept the payments and sent them back to her.  JPMorgan informed

No. 12-50380

Martin-Janson that it would not credit any payments to her account while her account was under review for modification. Instead, the bank's representatives informed her that the arrears would be rolled over into the modified loan. JPMorgan also informed Martin-Janson that not making payments was a precondition for approval of her loan modification. During the course of her correspondence with various representatives from JPMorgan, Martin-Janson submitted at least five applications for a loan modification, because JPMorgan informed her on different occasions that information or documents were missing from her previously-submitted applications.

When Martin-Janson contacted JPMorgan again in early 2011 to ask why she could not make payments, the bank suggested that she place the money in escrow in order to be able to make payments once the modification was approved. As a result, she saved between $5,000 and $6,000 in anticipation of approval of the modification. However, in February 2011, JPMorgan sent Martin-Janson an acceleration warning letter. Martin-Janson thereafter contacted JPMorgan to ask why she was receiving pre-foreclosure letters. The bank's representatives continued to assure her that a modification was forthcoming and that they sent the letters in error. However, JPMorgan sent a formal notice of acceleration and trustee's sale on June 11, 2011.

On June 29, 2011, Martin-Janson filed the first of two lawsuits challenging the foreclosure in Texas state court. JPMorgan removed that action to the district court on July 12, 2011. In that first action, Martin-Janson brought claims for: 1) a declaration that Defendants lacked standing and had no legal or equitable right to foreclose on the property; 2) promissory estoppel; 3) violations of the Texas Deceptive Trade Practices Act; and 4) negligent misrepresentation. On JPMorgan's motion to dismiss under Rule 12(b)(6), the district court dismissed all of Martin-Janson's claims, except for promissory estoppel. On the promissory estoppel cause of action, the court requested a more definite

statement regarding the statements and promises Martin-Janson was alleging that JPMorgan made to her.  Following Martin-Janson's submissions to the district court and JPMorgan's response, the court dismissed Martin-Janson's promissory estoppel claim on January 11, 2012, but "not without serious misgivings."  The district court concluded that Martin-Janson's promissory estoppel claim was barred under the statute of frauds and Texas law's restriction of such claims pertaining to loan agreements in excess of $50,000.  The district court further suggested that Martin-Janson may have had a stronger claim for waiver, but that she had not pled waiver in her amended complaint.

The district court's dismissals of Martin-Janson's claims in the first action were without prejudice.  On January 24, 2012, Martin-Janson filed a second suit in the district court, which is the action now pending before this court.  In this suit, Martin-Janson again challenges JPMorgan's authority to foreclose upon her home by asserting claims of waiver and promissory estoppel.  Martin-Janson alleges that JPMorgan waived its right to collect payments and to foreclose based on her 2009 default because of its refusal to accept her payments and failure to timely foreclose upon her home once the bankruptcy court lifted the stay of foreclosure in May 2010.  With respect to promissory estoppel, Martin-Janson argues that JPMorgan's promises that she would be granted a loan modification prevent the bank from foreclosing on her home for the payments she missed between May 2010 and February 2011.  On March 28, 2012, the district court granted JPMorgan's motion to dismiss these claims with prejudice.  Martin-Janson timely appealed.

## III.

We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo.  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

IV.

## A.   Waiver

In Texas, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (citation omitted); *see also Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 298 (5th Cir. 2010) (citing *Sun Exploration* for this proposition). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam) (citation omitted). "Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, . . . the question becomes one of law." *Jernigan*, 111 S.W.3d at 156-57; *accord First Interstate Bank of Ariz., N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) (citation omitted) (acknowledging that, under Texas law, "the issue of waiver becomes a matter of law only where material facts and circumstances are undisputed or clearly established and there is no room for argument or inference").

We agree with the district court that Martin-Janson's allegations fail to state a claim for declaratory relief on the basis of waiver for two reasons. First, the original loan agreement expressly precludes a finding that JPMorgan has waived its right to foreclose on the property based upon the bank's delaying its right to foreclose or foregoing timely payments for several months. Second, even if JPMorgan waived its rights to timely payments after May 2010, when it instructed Martin-Janson not to make payments pending a loan modification approval, it did not waive its right to accelerate the note based upon her pre-May 2010 default.

No. 12-50380

The language of the Note states:

> 7. BORROWER'S FAILURE TO PAY AS REQUIRED
>
> . . .
>
> (C) Acceleration
> If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of principal which has not been paid and all the interest I owe on that amount.
>
> (D) No Waiver By Note Holder
> Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Moreover, the Deed of Trust provides:

> 11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the original Borrower or Borrower's successors in interest from Borrower's obligations under the Note and this Security Instrument. Lender shall not be required to commence proceedings against any successor in interest or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. *Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.*

(emphasis added).

Accordingly, the terms of the loan agreement prove fatal to Martin-Janson's claim for a declaratory judgment that the bank has waived its right to

accelerate the note and foreclose on the property. Martin-Janson already was in default before JPMorgan instructed her not to make payments pending a potential modification. In 2009, JPMorgan commenced foreclosure proceedings, which the bankruptcy court stayed until May 2010. The fact that the bank did not formally pursue foreclosure sooner than June 2011 does not indicate that it intended to relinquish its rights to foreclose, a conclusion which the terms of the loan agreement make plain. Accordingly, we AFFIRM the district court's dismissal of this claim.

## B.　Promissory Estoppel

Promissory estoppel is an equitable doctrine that ordinarily is used as a defense in order to "prevent[] a party from insisting upon [its] strict legal rights when it would be unjust to allow [it] to enforce them." *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965) (citation omitted). Texas courts have contemplated promissory estoppel claims as either independent claims or defenses to a statute of frauds defense. *See, e.g.*, *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 138-40 (Tex. App.–Corpus Christi, 2001) (identifying promissory estoppel as both a defense and an independent claim). Here, Martin-Janson's complaint pleads promissory estoppel as an independent cause of action.

"When a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005) (citation omitted). Where an agreement implicates the statute of frauds, "[t]he promise which is determinative . . . is the promise to sign a written agreement which itself complies with the statute of frauds." *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 940 (Tex. 1973); *Martins v. BAC Home Loans Servicing, L.P.*, ___ F.3d ___, 2013 WL 3213633, at *5 (5th Cir. June 26, 2013) ("Promissory estoppel may overcome the statute-of-frauds requirement in Texas, but 'there must have been a promise to sign a written contract which

No. 12-50380

had been prepared and which would satisfy the requirements of the statute of frauds.'" (citations omitted)); *see also Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982) (citation omitted) ("[C]ourts will enforce an oral promise to sign an instrument complying with the Statute of Frauds if: (1) the promisor should have expected that his promise would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid injustice.").

Here, Martin-Janson's promissory estoppel claim alleges that JPMorgan repeatedly promised not to foreclose on her home, to defer payments, and to modify her loan. As a result, she detrimentally relied on these promises by not making payments. Therefore, justice requires that we hold JPMorgan to its promises. Based on these facts, the district court stated that it would be inclined to conclude that Martin-Janson has properly stated a claim for relief, in the absence of Texas's case law relating to the statute of frauds. We agree.

JPMorgan has raised the statute of frauds in defense of Martin-Janson's promissory estoppel claim. The statute of frauds is an affirmative defense. *See* Fed. R. Civ. P. 8(c); *EPCO Carbon Dioxide Prods.*, 467 F.3d at 470.

Under Texas statutory law, loan agreements for amounts in excess of $50,000 are subject to the state's specific statute of frauds for these agreements, which provides in relevant part:

> (b) A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

> (c) The rights and obligations of the parties to an agreement subject to Subsection (b) of this section shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement.

8

No. 12-50380

> (d) An agreement subject to Subsection (b) of this
> section may not be varied by any oral agreements or
> discussions that occur before or contemporaneously
> with the execution of the agreement.

Tex. Bus. & Com. Code §§ 26.02(b)-(c) (2009) (footnote omitted).

The statute's definition of "loan agreement" includes promises or agreements "pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." *See id.* § 26.02(a)(2).

Martin-Janson has made the following factual allegations in her amended complaint: 1) "[JPMorgan] repeatedly stated that a loan modification was imminent and that she should not make payments until the modification came through"; 2) "In February 2011, when [Martin-Janson] began receiving acceleration warnings, [she] called [JPMorgan] to ask why. Chase again told her that a loan modification would be forthcoming, indicating that the foreclosure notice was in error"; 3) "Based on [JPMorgan's] representations that a loan modification was certain and imminent, [Martin-Janson] believed [JPMorgan] in fact prepared a specific loan modification agreement but never forwarded that document to [her]"; 4) "[T]o the extent any terms of that agreement are not clear or not filled in, the core terms may be determined from a formula that [JPMorgan] uses to calculate loan modifications–interest rate, monthly payment, loan balances, and other core terms based on [Martin-Janson's] income profile"; and 5) "JPMorgan uses standard forms (uniform instruments and loan modification templates, for example) and computation procedures that determine the terms of loan modifications, and these are in the sole possession and control of [JPMorgan], without borrower input."

9

No. 12-50380

Based on the foregoing factual allegations, Martin-Janson asserts that she seeks discovery to reveal either the draft loan modification agreement that JPMorgan allegedly prepared, or the terms of her promised modification based on the lender's standard formulae. In these ways, Martin-Janson argues, she would be able to prove that JPMorgan "promise[d] to sign a written agreement which itself complies with the statute of frauds," *"Moore" Burger*, 492 S.W.2d at 940. *See also Martins,* 2013 WL 3213633, at *5 (citations omitted).

Viewing Martin-Janson's factual allegations, and the reasonable inferences to be drawn therefrom, in the light most favorable to her, we conclude that she has pled a plausible promissory estoppel claim that potentially avoids JPMorgan's statute of frauds defense. *See Iqbal*, 556 U.S. at 678 (citation omitted) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, we REVERSE the district court's dismissal of Martin-Janson's promissory estoppel claim.

V.

In conclusion, we AFFIRM the district court's dismissal of Martin-Janson's claim for declaratory relief on the basis of waiver with prejudice, and we REVERSE and REMAND the district court's dismissal of Martin-Janson's promissory claim for further proceedings.

10