# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20598

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2017

Lyle W. Cayce
Clerk

MICHAEL BYNANE,

Plaintiff - Appellant

v.

THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CWMBS, INCORPORATED ASSET-BACKED CERTIFICATES SERIES 2006-24; BANK OF AMERICA, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before KING, PRADO, and SOUTHWICK, Circuit Judges.

KING, Circuit Judge:

Plaintiff–Appellant Michael Bynane appeals the dismissal of his claims, which related to his mortgage and the foreclosure on his home. As an initial matter, Bynane argues that the district court lacked subject matter jurisdiction because there was not complete diversity, which requires us to address the recurring issue of whether diversity jurisdiction hinges on a trustee's citizenship or a trust's shareholders' citizenships. Bynane also contends that certain claims were improperly dismissed and that he should have been allowed leave to amend his complaint. For the following reasons,

No. 16-20598

we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2006, Plaintiff–Appellant Michael Bynane executed a $135,000 note in favor of Countrywide Home Loans, Inc. (Countrywide) for the purpose of purchasing a property located in Houston, Texas. To secure the note, Bynane and his wife executed a security instrument (the Deed of Trust) in favor of Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Countrywide and Countrywide's successors and assigns. In January 2012, MERS assigned its interest under the Deed of Trust to Defendant–Appellee The Bank of New York Mellon (BONYM), as trustee for the certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2006-24.

After Bynane defaulted on the loan, BONYM accelerated the debt, obtained a June 2014 order to proceed with a foreclosure, and sold the property to David Guzman for $281,000 at a substitute trustee's sale in March 2015. In April 2015, Bynane filed a lawsuit in Texas state court against MERS, BONYM, Bank of America, N.A. (BANA, and together with MERS and BONYM, Appellees), and Guzman, which was removed to federal district court (*Bynane I*). Further litigation ensued, including Bynane filing a first amended complaint and Appellees filing a motion to dismiss. Bynane also moved to remand the case to state court, arguing that complete diversity was lacking because Guzman was a citizen of Texas (of which Bynane was also a citizen), not Indiana (which was claimed in the notice of removal). The district court denied the motion to remand. Following the district court's denial of his motion to reconsider on August 6, 2015, Bynane voluntarily dismissed his complaint without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

A few days later, Bynane filed this lawsuit in Texas state court, naming, once again, Appellees and Guzman as the defendants. Bynane's complaint applied for a temporary restraining order and injunction and included six

2

No. 16-20598

causes of action: (1) lack of standing to foreclose; (2) quiet title; (3) breach of contract; (4) promissory estoppel; (5) fraud; and (6) violation of the Texas Debt Collection Act. Appellees removed the case to federal district court on the basis of diversity jurisdiction.[1] On October 12, 2015, Appellees moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] On October 13, 2015, Bynane moved to remand the case, alleging, once again, that Guzman was a citizen of Texas, not Indiana. Appellees and Guzman filed separate oppositions to the motion to remand, and Guzman supported his opposition with his own affidavit stating, *inter alia*, that "Indiana is my home where I always intend to return and stay." On December 1, 2015, the district court concluded that Guzman was a citizen of Indiana and, thus, denied Bynane's motion to remand.

On December 15, 2015, the district court granted both Appellees' and Guzman's motions to dismiss, thus leaving only Guzman's counterclaim against Bynane pending. The district court also denied Bynane leave to replead his claims. On March 7, 2016, the district court reinstated the case and ordered the parties to address whether diversity jurisdiction existed in light of the Supreme Court's decision that same day in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016). On May 10, 2016, after receiving the requested briefing from the parties, the district court concluded that there was diversity jurisdiction. Specifically, the district court found that, for the purpose of determining diversity jurisdiction, the citizenship of BONYM as the trustee is what matters, not the citizenships of the trust's shareholders. Thus, because BONYM is a citizen of New York, the district court concluded

---

[1] Prior to removal, Guzman filed a counterclaim against Bynane, alleging that Bynane's lawsuit was groundless and brought for an improper purpose.

[2] On October 26, 2015, Guzman separately moved to dismiss the complaint for failure to state a claim.

3

that there was diversity jurisdiction.

On May 25, 2016, the district court entered a Federal Rule of Civil Procedure 54(b) final judgment, dismissing all of Bynane's claims against Appellees as ordered by its December 15, 2015, opinion granting Appellees' motion to dismiss. On June 22, 2016, Bynane filed a combined motion to alter or amend judgment and for leave to file an amended complaint (Combined Motion). In the Combined Motion, Bynane argued that (1) the district court should allow him to amend his complaint to add allegations under section 50(a)(6) of the Texas Constitution in light of the Texas Supreme Court's recent decision in *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016); (2) the district court erred in concluding that his allegation that the mortgage assignment was void as a forgery was insufficient; and (3) the district court erred in denying his request to amend his promissory estoppel claim. On July 15, 2016, Bynane filed a proposed amended complaint for his allegations relating to violations of section 50(a)(6). The district court denied the Combined Motion. Bynane timely appeals.

## II.  DIVERSITY JURISDICTION

We first address the threshold issue of whether there is subject matter jurisdiction over this case on the basis of diversity jurisdiction. Under 28 U.S.C. § 1332(a), diversity jurisdiction exists when there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See, e.g.*, *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (per curiam). "[C]omplete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) (alteration in original) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). Our review of a district court's determination that diversity jurisdiction exists is de novo. *See*

No. 16-20598

*Arena v. Graybar Elec. Co.*, 669 F.3d 214, 218–19 (5th Cir. 2012). The party seeking the federal forum has the burden of establishing diversity jurisdiction. *See id.* at 219. Accordingly, in this case, Appellees have the burden of establishing diversity jurisdiction given that they invoked federal jurisdiction by removing Bynane's state court case. *See Howery v. Allstate Ins.*, 243 F.3d 912, 916 (5th Cir. 2001).

The district court found that there was complete diversity: Bynane is a citizen of Texas; BANA, a national banking association with its main office located in North Carolina, is a citizen of North Carolina; MERS, a Delaware corporation with its principal place of business in Virginia, is a citizen of Delaware and Virginia; BONYM, a national banking association with its main office located in New York, is a citizen of New York; and Guzman is a citizen of Indiana. On appeal, Bynane challenges the district court's citizenship findings with respect to BONYM and Guzman. First, Bynane contends that the district court erred in considering only the citizenship of BONYM as the trustee, and instead, the district court should have considered the citizenship of each of the shareholders of the trust. Second, Bynane argues that an individual named Preston Julian purchased the property from Guzman prior to removal. According to Bynane, Julian is thus the real party in interest, and because Julian appears to be a citizen of Texas, complete diversity was lacking at the time of removal. We address each argument in turn.

## A. BONYM

Bynane's first argument raises the issue of whether the district court erred in not considering the citizenships of the trust's shareholders. In determining diversity jurisdiction, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). In *Navarro*, the Supreme Court addressed whether the trustees or the trust's

5

No. 16-20598

beneficial shareholders are the real parties to a controversy when the trustees are named as the parties in the lawsuit. *Id.* at 462. The Supreme Court held that, in such a situation, "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464. And in that case, the trustees were the real parties to the controversy because their "control over the assets held in their names [wa]s real and substantial." *Id.* at 465. Here, *Navarro* has a straightforward application: BONYM, the trustee, was named as the defendant in this lawsuit, and thus, BONYM is the real party to the controversy (and therefore its citizenship is what matters in determining diversity jurisdiction) if its control over the trust's assets is real and substantial. *See id.*

Bynane, however, argues that we should instead look to the Supreme Court's recent decision in *Americold*. In that case, the Supreme Court considered whose citizenship—the trustee's or the trust's shareholders'—matters in determining diversity jurisdiction for a real estate investment trust organized under Maryland law. *Americold*, 136 S. Ct. at 1015–17. Treating the trust as a non-corporate artificial entity and applying the "oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all [its] members," the Supreme Court held that the real estate investment trust's shareholders' citizenships must be considered. *See id.* (alteration in original) (internal quotation marks omitted) (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)). Notably, the Supreme Court "decline[d] to apply the same rule to an unincorporated entity sued in its organizational name that applies to a human trustee sued in her personal name." *See id.* at 1017. In other words, because the real estate investment trust was sued in its own name (rather than the suit being filed against the trustee), the Supreme Court declined to apply the rule from *Navarro* that a

6

federal court looks only at the trustee's citizenship; instead, the Supreme Court applied the "oft-repeated" rule that an unincorporated entity (the trust in that case) possesses the citizenship of its members.  *See id.*

The crux of the issue raised by Bynane's argument is whether *Navarro* controls (*i.e.*, we should look at only the trustee's citizenship) or whether *Americold* controls (*i.e.*, we should look at the citizenships of all of the trust's shareholders).  In *Justice v. Wells Fargo Bank National Association*, 674 F. App'x 330 (5th Cir. 2016) (per curiam), an unpublished opinion,[3] we addressed a similar question involving a trustee of a mortgage securitization trust and held that, for the purpose of determining diversity jurisdiction, the citizenship of the trustee is what matters.  *See id.* at 332.  Put another way, *Justice* held that the *Navarro* rule still controls when the trustee sues or is sued in its own name.  *See id.*  We agree.  As we recognized in *Justice*, *Americold* "reiterated [the Supreme Court's] prior holding in *Navarro* . . . , 'that when a trustee files a lawsuit in her name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person.'"  *Id.* (quoting *Americold*, 136 S. Ct. at 1016).  Indeed, *Americold* emphasized that *Navarro*'s rule "coexists" with *Americold*'s discussion that, "when an artificial entity is sued in *its* name, it takes the citizenship of each of its members."  *See Americold*, 136 S. Ct. at 1016.  Thus, *Navarro*'s rule is still good law: "Where a trustee has been sued or files suit in her own name, the only preliminary question a court must answer is whether the party is an 'active trustee[] whose control over the assets held in [its] name[] is real and substantial.'"  *Justice*, 674 F. App'x at 332 (alterations in original) (quoting *Carden*, 494 U.S. at 191).

Here, similar to the trustee in *Justice*, BONYM was sued in its capacity

---

[3] "Although unpublished opinions are not precedential, they are persuasive."  *United States v. Olivares*, 833 F.3d 450, 453 n.1 (5th Cir. 2016) (per curiam).

as a trustee.  Thus, *Navarro* controls, and the only remaining question is whether BONYM possesses the sort of "real and substantial" control over the trust's assets discussed in *Navarro*.  And just as in *Justice*, the trustee here, BONYM, has "real and substantial" control.  For example, under the Pooling and Service Agreement (PSA) for the trust, "all right, title, and interest in and to the Initial Mortgage Loans" were transferred to BONYM as trustee.  Moreover, under the PSA, the certificateholders have only limited rights to vote or otherwise control the operation of the trust.  Thus, we consider in determining diversity jurisdiction only the citizenship of BONYM, which Bynane does not dispute is a citizen of New York for diversity jurisdiction purposes.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located.").

We reject Bynane's argument that, contrary to the straightforward application of *Navarro* and *Americold* described above, we should instead adopt the two part test used in an unpublished district court opinion:

> (1) identify whether the trust or the trustee is the real and substantial party to the controversy, and (2) if the trust is the real party, then determine whether it is a "traditional trust" where a court looks to the citizenship of the trustee, or whether it is a "business trust" (unincorporated association) where a court looks to the citizenship of the trust's members to determine jurisdiction.

*Guillen v. Countrywide Home Loans, Inc.*, No. H-15-849, 2016 WL 7103908, at *4 (S.D. Tex. Dec. 6, 2016).  Under *Guillen*'s test, even if the trustee is the named defendant because the trust is not an entity that can be sued in its own capacity under state law, a district court must examine the substance of the complaint to see if the allegations show that the trust is the real party to the controversy, and if it is, the district court must then wade into the thicket of determining whether the trust is a business trust or a traditional trust.  We disagree with this test for several reasons.  First, as noted above, we do not

8

No. 16-20598

interpret *Americold* as standing for the proposition that a district court must disregard whether the trust or trustee is sued and look instead at how the substance of the complaint characterizes the real party to the controversy.[4] Rather, if the trustee sues or is sued in the trustee's own name, then *Navarro*'s rule controls. Second, nominally determining whether the trust is a "business" or "traditional" trust is not the appropriate test. Putting aside the fact that a business trust and a traditional trust lack clear definitions and the line between them is blurry at best, the characterization of the trust as a business or traditional trust is not dispositive. As we stated in *Justice*, "[t]he fact '[t]hat the trust [otherwise] may depart from conventional forms in other respects has no bearing upon'" our determination of whether the trustee's control over the trust's assets is real and substantial. *Justice*, 674 F. App'x at 332 (second and third alterations in original) (quoting *Navarro*, 446 U.S. at 465). Indeed, *Navarro* involved what the Supreme Court referred to as a "business trust"— yet, the Supreme Court held that the trustees' citizenships were the relevant inquiry in determining diversity jurisdiction.[5] *See Navarro*, 446 U.S. at 459. In sum, *Navarro* provides the appropriate framework here: BONYM's citizenship, not the trust's shareholders' citizenships, is relevant for determining diversity jurisdiction because BONYM was sued in its own name as trustee and it has sufficiently real and substantial control over the trust's

---

[4] In *Guillen*, the district court appears to have disregarded how *Navarro* determined whether a trustee is a real party to the controversy, instead "[l]ooking beyond the mere caption of the suit" and finding "that Guillen's original petition treats the trust as the real and substantial party to the controversy because the trust 'apparently contains at least the piece of real estate at issue in this case.'" *See id.* at *6.

[5] Moreover, *Guillen*'s test would require an extensive examination by district courts. The Supreme Court, however, noted that "the relative simplicity" of the rule applied in *Navarro* "is one of its virtues." *Navarro*, 446 U.S. at 464 n.13 ("Jurisdiction should be as self-regulated as breathing; . . . litigation over whether the case is in the right court is essentially a waste of time and resources.'" (omission in original) (quoting David A. Currie, *The Federal Courts and the American Law Institute, Part I*, 36 U. Chi. L. Rev. 1, 1 (1968))).

No. 16-20598

assets. *See Americold*, 136 S. Ct. at 1016 ("And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes.").

## B. Guzman and Julian

Bynane's second argument relating to diversity jurisdiction is that the district court should have considered that Julian is purportedly a citizen of Texas. Bynane argues that, prior to removal, Guzman transferred his interest in the property to Julian. According to Bynane, a recent Texas Court of Appeals decision confirms the transfer to Julian.[6] Bynane concludes that the district court should have effectively looked through Guzman and considered Julian's purported Texas citizenship as a real party to the controversy, and thus, complete diversity did not exist at the time of removal because Julian and Bynane are both Texas citizens.

Bynane's argument, however, is flawed. "The 'real party to the controversy' test does not require a federal court to consider the citizenship of non-parties who have an interest in the litigation or might be affected by the judgment." *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 865 n.10 (5th Cir. 2003). Instead, "[t]he 'real party to the controversy' test requires consideration of the citizenship of non-parties when a party already before the court is found to be a non-stake holder/agent suing only on behalf of another." *Id.* But here, it is simply not accurate to characterize Guzman as only litigating this case on behalf of another: Bynane named Guzman as a defendant in the suit with causes of action based, in part, on Guzman's purchase of the property at foreclosure, and Guzman was not named as a litigant only on behalf of another.

---

[6] In *Bynane v. Guzman*, No. 01-16-00356-CV, 2017 WL 1089774 (Tex. App.—Houston [1st Dist.] Mar. 23, 2017, no pet.), the Texas Court of Appeals held that Guzman lacked standing in an eviction suit against Bynane because Guzman had sold his interest in the property to Julian on March 24, 2015. *Id.* at *1.

Even assuming that Julian had an interest in the property at the time of removal, the law does not dictate that the district court should have looked through Guzman to determine whether Julian's citizenship would destroy complete diversity. And Bynane does not cite to any caselaw mandating such a result. Perhaps there could have been an issue of whether Julian should have been joined to the litigation, but that was not an argument raised by Bynane. *Cf. Keybank Nat'l Ass'n v. Perkins Rowe Assocs., L.L.C.*, 539 F. App'x 414, 417 (5th Cir. 2013) (per curiam) ("Whether the other non-party banks in this case are necessary parties whose joinder would defeat diversity is a much different question. Although the district court determined that the other banks were not necessary parties under Rule 19, Perkins Rowe has not briefed that issue, and we do not consider it." (citations omitted)). Accordingly, the district court did not err by failing to consider that Julian is purportedly a citizen of Texas.[7]

In sum, the district court did not err in determining that diversity jurisdiction exists in this case: Bynane is a citizen of Texas, BANA is a citizen of North Carolina, MERS is a citizen of Delaware and Virginia, BONYM is a citizen of New York, and Guzman is a citizen of Indiana.

## III. FORGERY ALLEGATION

We next turn to Bynane's argument that the assignment from MERS to BONYM was void because Dominique Johnson, an assistant secretary employed by MERS who signed the assignment, was not authorized by MERS to execute the assignment or, alternatively, Johnson's signature was forged by someone else. The district court rejected this argument and dismissed Bynane's claims for lack of standing to foreclose, quiet title, and breach of

---

[7] To the extent that Bynane argues that we must also consider the citizenship of Marcia Clark (another individual who Bynane suggests potentially owns a share of the property), we reject this argument for the same reasons discussed above.

contract because each of those claims was based on the allegation that the assignment was void due to forgery. "We review de novo a district court's dismissal under Rule 12(b)(6), accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).

Under Texas law, "an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor." *Reinagal v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 225 (5th Cir. 2013). However, "the obligor *may* defend 'on any ground which renders the assignment void.'" *Id.* (quoting *Tri-Cities Constr., Inc. v. Am. Nat'l Ins.*, 523 S.W.2d 426, 430 (Tex. App.—Houston [1st Dist.] 1975, no writ)). As noted above, Bynane advances two arguments for why the assignment was void: (1) Johnson signed the assignment but lacked authority to do so on behalf of MERS, or alternatively, (2) Johnson did not actually sign the assignment, and instead, Johnson's signature was forged by some unknown individual.

Bynane's first argument—*i.e.*, Johnson signed the assignment but lacked authority to do so—fails. Under Texas law, "a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal." *Id.* at 226. Here, even accepting as true Bynane's allegation that Johnson was not authorized to execute the assignment, this allegation merely renders the assignment voidable at MERS's behest. Thus, given that this allegation merely renders the assignment voidable, Bynane may not defend against BONYM's enforcement of his obligation on the ground that Johnson executed the assignment without authorization. *See id.*

Bynane's second argument—*i.e.*, Johnson's signature on the assignment was forged—also fails. As an initial matter, the assignment would be void if it

was forged, and "[a] document is forged if it is signed by one who purports to act as another."  *See Vazquez v. Deutsche Bank Nat'l Tr. Co., N.A.*, 441 S.W.3d 783, 787–88 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  However, Bynane's conclusory allegation that Johnson's signature was forged fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Kreway v. Countrywide Bank, FSB*, 647 F. App'x 437, 437–38 (5th Cir. 2016) (per curiam) (holding that a forgery allegation was insufficiently pled when its only support came from an exhibit comparing signatures and it lacked any facts "relating to who perpetrated the alleged forgery or how, when, and where the alleged forgery was executed"); *Brinson v. Universal Am. Mortg. Co.*, No. G-13-463, 2014 WL 4354451, at *4 n.1 (S.D. Tex. Sept. 2, 2014) (applying Rule 9(b) to a forgery allegation); *see also Lone Star Ladies Inv. Club v. Schlotzky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").  Bynane's only allegation on this point amounts to stating that the assignment "was signed, or the electronic signature was affixed, by a person not Dominque Johnson, and signed or affixed by a person without any kind of authority whatsoever from the real Dominque Johnson, and without the knowledge or assent of the real Dominque Johnson."  Bynane's forgery allegation appears to be premised solely on his deduction that the assignment must have been forged because Johnson's signature on the assignment, which was attached to the complaint, looks different than her signature on an unrelated assignment, which was also attached to the complaint.[8]  Such bare and conclusory allegations are insufficient.  *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (per curiam) ("Rule 9(b)

---

[8] "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

requires the who, what, when, where, and how to be laid out." (internal quotation marks omitted) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003))).

In sum, Bynane fails to adequately allege a ground that would make the assignment void. Accordingly, the district court did not err in dismissing Bynane's claims for lack of standing to foreclose, quiet title, and breach of contract given that each of those claims was based on the assignment being void.

## IV. PROMISSORY ESTOPPEL

Next, we address Bynane's argument that the district court erred in dismissing his promissory estoppel claim. Bynane alleged that BANA promised over the phone and in writing that it would consider a loan modification application from him and that "no non-judicial or judicial foreclosure would occur until the loan modification process was completed and [he] was given an answer that his application was either granted or denied." Bynane further alleged that BANA promised "to sign a written modification document already in existence at the time of the promise if the modification was approved." The district court, however, found that these allegations were insufficient because Bynane had failed to allege that the purported "written modification document already in existence" satisfied the statute of frauds by containing the material terms of the loan modification. Similar to Bynane's forgery allegation, we review the district court's dismissal of this claim de novo. *See Sullivan*, 600 F.3d at 546.

Pursuant to Texas's statute of frauds, "[a] loan agreement for more than $50,000 is not enforceable unless it is in writing." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing Tex. Bus. & Com. Code § 26.02(b)). An agreement to modify such a loan must also be in writing to be valid. *Id.* Promissory estoppel is an exception to the statute of frauds, but the

exception requires, *inter alia*, there to "have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Id.* at 256–57 (quoting *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied)). Relevant to this case is the latter requirement—*i.e.*, the already prepared written loan modification agreement must itself satisfy the statute of frauds. But here, although Bynane did allege that BANA promised "to sign a written modification document already in existence at the time of the promise if the modification was approved," Bynane did not allege anything about how the written loan modification agreement contained sufficient material terms to itself satisfy the statute of frauds. For example, Bynane failed to allege even what terms were being changed and included in the written loan modification agreement.[9] *Cf. Scott v. Bank of Am., N.A.*, 597 F. App'x 223, 225 (5th Cir. 2014) ("To satisfy the statute of frauds in Texas, a writing . . . 'must be complete within itself in every material detail and contain all of the essential elements of the agreement.'" (quoting *Sterrett v. Jacobs*, 118 S.W.3d 877, 879–80 (Tex. App.—Texarkana 2003, pet. denied))); *BACM 2001-1 San Felipe Road*

---

[9] Bynane points to our unpublished decision in *Martin-Janson v. JP Morgan Chase Bank, N.A.*, 536 F. App'x 394 (5th Cir. 2013) (per curiam), to support his argument that his complaint sufficiently alleged the terms of the written loan modification agreement. It is true that the plaintiff in *Martin-Janson* sufficiently alleged a promissory estoppel claim when the lender had promised not to foreclose on the loan and that the loan would be modified. *Id.* at 398–99. However, *Martin-Janson* is distinguishable because the plaintiff in that case also included additional allegations about the terms of the modification agreement. For example, we highlighted in that case how the plaintiff had included, *inter alia*, the following two allegations: "[t]o the extent any terms of that agreement are not clear or not filled in, the core terms may be determined from a formula that [the lender] uses to calculate loan modifications—interest rate, monthly payment, loan balances, and other core terms based on [the plaintiff's] income profile;" and "[the lender] uses standard forms (uniform instruments and loan modification templates, for example) and computation procedures that determine the terms of loan modifications, and these are in the sole possession and control of [the lender], without borrower input." *Id.* In any event, *Martin-Janson*, an unpublished opinion, is not precedential even if it could be construed as requiring reversal in this case. *Olivares*, 833 F.3d at 453 n.1.

No. 16-20598

*Ltd. P'ship v. Trafalgar Holdings I, Ltd.*, 218 S.W.3d 137, 146 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("A modification alters only those terms of the original agreement to which it refers, leaving intact those unmentioned portions of the original agreement that are not inconsistent with the modification."). Accordingly, the district court did not err in dismissing this claim.

Bynane argues in the alternative that the district court erred in failing to allow him leave to replead his promissory estoppel claim. "We review the district court's denial of a motion for leave to amend for abuse of discretion." *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (per curiam). "In determining whether to grant leave to amend, 'the court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment.'" *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (alteration in original) (internal quotation marks omitted) (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013)).

Here, the district court did not abuse its discretion in denying Bynane leave to replead his promissory estoppel claim. As the district court reasoned, Bynane had raised a promissory estoppel claim in *Bynane I*, and in light of being able to see Appellees' motion to dismiss in that case prior to voluntarily dismissing his complaint, Bynane already had the opportunity to rework his current promissory estoppel claim. Moreover, the district court reasoned that Bynane's voluntary dismissal of *Bynane I* and refiling of this case created an undue delay and suggested a dilatory motive.[10] Finally, the district court noted

---

[10] Bynane's only argument that there was an abuse of discretion appears to be that the district court erred by considering at all the fact that he voluntarily dismissed a complaint prior to filing this action. Bynane, however, points to no caselaw supporting his argument,

that Appellees and Guzman would suffer undue prejudice from further delay in the resolution of this case, especially considering that Guzman had yet to take possession of the property. In light of the district court's reasoning and the circumstances of this case, the district court did not abuse its discretion in denying Bynane leave to replead his promissory estoppel claim.

## V. MOTION TO AMEND

Finally, we turn to Bynane's argument that the district court erred in denying him leave to amend his complaint to assert claims under section 50(a)(6) of the Texas Constitution. Bynane argues that, when he initially filed his complaint, he was ethically prohibited from asserting claims under section 50(a)(6) because then-controlling precedent held that such claims were subject to a four-year statute of limitations. *See Priester*, 708 F.3d at 673–74. According to Bynane, the recent Texas Supreme Court decision in *Wood* was an intervening change in law that now allows him to bring such claims. *Cf. Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017) (recognizing that the Texas Supreme Court's holding in *Wood* abrogated, in part, our decision in *Priester*). As part of his proposed amended complaint filed in the district court, Bynane alleged several violations of section 50(a)(6) that served as the basis for three causes of action: (1) breach of contract, (2) quiet title, and (3) declaratory judgment.

The district court denied Bynane's request for leave to amend on the ground that his amendments would be futile. Specifically, the district court concluded that Bynane cannot state a claim under section 50(a)(6) because Guzman, a third party, had purchased the property without knowledge of the alleged section 50(a)(6) violations. The district court also concluded, citing

---

and we decline to find an abuse of discretion under these circumstances based solely on the district court's consideration of his prior voluntary dismissal in determining whether to grant leave to replead this claim.

*Wood*, that Bynane cannot state an affirmative claim asserting substantive rights under section 50(a)(6). *See Wood*, 505 S.W.3d at 546 ("Specifically, we hold in *Garofolo* that section 50(a) does not create substantive rights beyond a defense to foreclosure of a home-equity lien securing a constitutionally noncompliant loan, observing that the terms and conditions in section 50(a)(6) 'are not constitutional rights and obligations unto themselves.'" (quoting *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 478 (Tex. 2016))). Although we generally review the district court's denial of a motion to amend for abuse of discretion, "where the district court's denial of leave to amend was based solely on futility, [we] appl[y] a de novo standard of review 'identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6).'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010)).

Bynane has waived any challenge to the district court's futility ruling by failing to adequately brief the issue. In his opening brief, Bynane's argument amounts to recounting how the change in law—*i.e.*, the statute of limitations ruling in *Wood*—should allow him to now bring "any good faith claims . . . under section 50(a)(6)." But the district court did not deny leave to amend because it disagreed with Bynane's characterization of the change in law; instead, it denied leave to amend because it found that the proposed amended complaint would be futile. Bynane does not engage at all with the district court's reasoning for why his proposed amended complaint would be futile, and indeed, he advances no arguments for why his proposed claims have any merit.[11] Accordingly, Bynane has waived his argument that the district court erred in denying his motion to amend. *See Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 450 (5th Cir. 2015) ("On

---

[11] Bynane's reply brief similarly does not discuss the merits of his proposed claims.

appeal, Singh makes a conclusory argument without addressing any aspects of the district court's opinion.    He has therefore waived review of this argument.").

## VI.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.