# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 17-20130

————

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2018

Lyle W. Cayce
Clerk

SGK PROPERTIES, L.L.C.; GARY P. KATZ,

> Plaintiffs - Appellants

v.

U.S. BANK NATIONAL ASSOCIATION, as Trustee for Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3,

> Defendant-Counter Plaintiff - Appellee

OCWEN LOAN SERVICING, L.L.C.,

> Defendant - Appellee

v.

STEVEN WEINREB,

> Counter Defendant - Appellant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SGK PROPERTIES, L.L.C.; GARY KATZ,

> Plaintiffs-Appellants

v.

OCWEN LOAN SERVICING, L.L.C.; U.S. BANK NATIONAL ASSOCIATION,

> Defendants-Appellees

No. 17-20130

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Chief Judge:

SGK Properties, LLC ("SGK"),[1] Gary Katz ("Katz"), and Steven Weinreb ("Weinreb") (collectively "Appellants") appeal the district court's dismissal of their respective claims against U.S. Bank National Association, as Trustee for Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3 ("U.S. Bank") and Ocwen Loan Servicing, L.L.C. ("Ocwen") (collectively "Appellees"). Weinreb also appeals the district court's denial of his motion to dismiss U.S. Bank for lack of standing, and SGK and Katz appeal several of the district court's other rulings, including its orders denying their motion to remand and motion to amend their complaint, as well as its order striking causes of action asserted in a responsive pleading. For the following reasons, we affirm.

## I.     Factual Background and Procedural History

On April 18, 2007, SGK received a loan from Greenpoint Mortgage Funding, Inc. ("Greenpoint") for the purchase of commercial real estate in the amount of $1,725,000, which was secured by a lien on the property. The transaction and resulting obligation was memorialized by two documents. First, SGK executed a promissory note ("the Note") in the principal amount of the loan, with an interest rate of 7.5% per annum. Katz and Weinreb, who were

---

[1] On March 19, 2014, SGK filed a certificate with the district court evidencing the entity's name change from SG Properties, LLC to SGK Properties, LLC.

SGK's sole members at the time, personally guaranteed repayment of the loan. SGK also executed a Deed of Trust, by which SGK conveyed the property to Greenpoint as consideration for and to secure payment of the Note.

U.S. Bank came to possess the Note and Deed of Trust through a series of assignments of endorsements. Specifically, on April 26, 2007, Greenpoint allegedly assigned the Deed to "Aurora Bank, FSB f/k/a Lehman Brothers Bank, FSB," which thereafter assigned the Deed to "U.S. Bank National Association, as Trustee for Lehman Brothers Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3," with an effective date of November 19, 2007.[2] Likewise, on a date unknown, Greenpoint endorsed the Note to "Aurora Bank, FSB f/k/a Lehman Brothers Bank, FSB," and Aurora endorsed the Note to U.S. Bank on April 18, 2007.

SGK raised concerns about the identity and existence of the true holder and owner of the Note and Deed and ceased making payments on the Note around October 2010. Specifically, SGK and Katz became skeptical of the endorsements and assignments in favor of Aurora and U.S. Bank, primarily because, at the time the purported endorsements and assignments were made to and from Aurora, Aurora did not exist as an entity.[3] After several delinquency notices, U.S. Bank authorized Ocwen, as its loan servicer, to administer a non-judicial foreclosure sale of the property, which was scheduled for December 2013. SGK and Katz made several attempts to cancel the

---

[2] The assignment from Aurora to U.S. Bank was signed by Aurora's Vice President Jack Jacob on April 12, 2010, and was notarized on April 21, 2010, upon acknowledgement of the signature by Jacob, which is authorized under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 121.004 (West 2011). Any argument about the discrepancy between the date the assignment was signed and the date same was notarized is unavailing.

[3] SGK and Katz submitted a certification from the Office of the Comptroller of Currency indicating that on April 27, 2009, the date on which SGK and Katz assert Aurora's existence as a legal entity began, "Lehman Brothers Bank, FSB" changed its title to "Aurora Bank FSB."

foreclosure but to no avail. SGK and Katz then sought and received a temporary restraining order in Texas state court on the grounds that the foreclosure was wrongful.

On January 9, 2014, U.S. Bank and Ocwen removed the case to federal court. SGK and Katz filed their First Amended Complaint, which included claims for trespass to try title, quiet title, breach of contract, tortious interference with an existing contract, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Debt Collection Act, and statutory fraud. The factual allegations in their complaint essentially challenged U.S. Bank's status as a valid holder of the Note and its incidental right to foreclose on the property in light of SGK and Katz's concerns about the validity of the assignments of the Deed. The complaint also questioned the district court's jurisdiction over the case, alleging that U.S. Bank, which SGK and Katz asserted was an unincorporated association, failed to demonstrate complete diversity of citizenship between the plaintiffs and U.S. Bank's members and shareholders. The district court *sua sponte* dismissed SGK and Katz's jurisdictional challenge. SGK and Katz thereafter filed a motion to remand for lack of diversity jurisdiction, offering the same arguments about U.S. Bank's status as an unincorporated association. Appellees did not respond to SGK and Katz's motion to remand, and the district court denied it, holding that U.S. Bank was a trustee and its citizenship in Ohio was determinative, which created complete diversity. U.S. Bank thereafter sought summary judgment on all of SGK and Katz's claims. The district court granted summary judgment against Katz after he failed to respond within the time period set by the court, but denied summary judgment against SGK because it was involved in

No. 17-20130

bankruptcy proceedings.[4] U.S. Bank then foreclosed on the property and sold it for $2.5 million. Because there was a deficiency balance, U.S. Bank filed a counterclaim against Katz, SGK and Weinreb to recover the difference.

SGK and Katz answered U.S. Bank's counterclaim and asserted three additional causes of action related to U.S. Bank's authority to enforce the Note and foreclose on the property. U.S. Bank moved to strike these additional claims, which the court granted that same day without allowing Katz or SGK an opportunity to respond. The parties then filed several pleadings, including: (1) a motion for leave to amend their complaint to re-assert the stricken claims by SGK and Katz, (2) a motion to dismiss for lack of standing by Weinreb, (3) a counterclaim against U.S. Bank for fraudulent misrepresentation and breach of duty by Weinreb, to which U.S. Bank responded with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); and (4) a motion for summary judgment by U.S. Bank on its counterclaim against Appellants. At a hearing, the court orally denied Katz and SGK's motion to amend, denied Weinreb's motion to dismiss, and granted U.S. Bank's motions to dismiss and for summary judgment. The district court rendered final judgment in favor of U.S. Bank in the amount of $374,548.34 for the deficiency, as well as attorneys' fees and costs.

## II.     Discussion

On appeal, SGK, Katz and Weinreb challenge all of the district court's adverse rulings and the final judgment. Specifically, Appellants raise the following issues: (1) whether the district court erred in denying SGK and Katz's motion to remand; (2) whether the district court erred in granting U.S. Bank's motion for summary judgment for its counterclaim; (3) whether the district

---

[4] SGK's bankruptcy action was dismissed on March 28, 2014, after which U.S. Bank renewed its motion for summary judgment to dismiss SGK's claims. The district court granted U.S. Bank's motion.

court erred by holding that U.S. Bank had standing to pursue Weinreb to recover the deficiency judgment; (4) whether the district court erred in denying Weinreb's fraudulent misrepresentation and breach of duty claims; (5) whether the district court abused its discretion in granting U.S. Bank's motion to strike SGK and Katz's additional causes of action; and (6) whether the district court erred in denying SGK and Katz leave to amend their complaint. We discuss each issue in turn.

*A. SGK and Katz's Motion to Remand*

SGK and Katz argue that the district court erred by denying their motion to remand because U.S. Bank never established complete diversity of citizenship. We review denial of a motion to remand de novo. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (citing *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014)). "Under 28 U.S.C. § 1332(a), diversity jurisdiction exists where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000." *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 355 (5th Cir. 2017). "[C]omplete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) (alteration in original) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). The party seeking the federal forum, here U.S. Bank, has the burden of establishing diversity jurisdiction. *Id.*

SGK and Katz specifically challenge the district court's citizenship finding with respect to U.S. Bank. The district court found that there was complete diversity of citizenship, holding in relevant part that "U.S. Bank need not disclose the citizenship of the beneficiaries of the trust" because "[a]s

trustee, its citizenship is determinative."[5] They contend that the district court erred by considering only the citizenship of U.S. Bank as the trustee. Instead, they argue, the district court should have considered the citizenship of each of the trust's shareholders and members. In so arguing, SGK and Katz aver that U.S. Bank is only a nominal or formal party present in the lawsuit on behalf of the trust.

It is true that "[i]n determining diversity jurisdiction, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy." *Bynane*, 866 F.3d at 356 (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)) (internal quotation marks omitted). In *Navarro*, the Supreme Court addressed whether the trustees or the trust's beneficial shareholders are the real parties to a controversy when the trustees are named as the parties to the lawsuit. *Navarro*, 446 U.S. at 462. The Court held that when a trustee is named as a defendant in a lawsuit, "[the] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464. Because U.S. Bank was named as a defendant in this lawsuit, its citizenship is determinative for purposes of diversity jurisdiction if its control over the trust's assets is real and substantial. *See Bynane*, 866 F.3d at 356.

SGK and Katz argue that the facts of this case require us to apply the Supreme Court's recent decision in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016). In *Americold*, the Supreme Court considered whose citizenship—the trustee's or the trust's shareholders'—matters in determining diversity jurisdiction for a real estate investment trust organized under

---

[5] It is undisputed that, at the time of removal, SGK and Katz were citizens of New Jersey, and that Ocwen was a citizen of the U.S. Virgin Islands.

Maryland law. *Americold*, 136 S. Ct. at 1015–17. The Supreme Court treated the trust as a non-corporate artificial entity and applied the "oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all [its] members." *Id.* at 1015. On this basis, the Supreme Court held that the real estate investment trust's shareholders' citizenships must be considered. *See id.* (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)) (alteration in original) (quotation marks omitted). Significantly, because the real estate investment *trust* was *sued in its own name*, the Supreme Court declined to apply the rule from *Navarro* that a federal court looks only at the trustee's citizenship. *Id.* at 1017. Because SGK and Katz sued the U.S. Bank in its capacity as trustee, their reliance on *Americold* is unavailing. Further, this court has previously held that the *Navarro* rule still controls when the trustee is a national banking association. *See Bynane,* 866 F.3d at 357 (discussing *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330 (5th Cir. 2016) (per curiam) (unpublished)).

Again, here, because U.S. Bank was sued in its capacity as trustee, *Navarro* controls, leaving us to determine only whether U.S. Bank possesses the sort of "real and substantial" control over the trust's assets to make it more than just a nominal party. We hold that it does. U.S. Bank, as assignee of the trust's assets—including the Note and Deed of Trust—is the holder of the Note and all rights due under it, and consequently has the right to enforce the Note and defend itself in this lawsuit. We therefore hold that there is complete diversity of citizenship among the parties and affirm the district court's denial of SGK and Katz's motion to remand.

### B. *Motion for Summary Judgment*

SGK and Katz also challenge the district court's summary judgment dismissal of their claims. In its summary judgment motion, U.S. Bank argued that because it is the legal holder of the Note, all of SGK and Katz's claims—

No. 17-20130

which were premised on allegations challenging the validity of the endorsements and assignments of the Note and Deed of Trust, respectively—should be dismissed. In support of their motion, Appellees submitted a certified copy of the original Note and an affidavit attesting to its authenticity. SGK and Katz maintain on appeal that Appellees were required to establish an unbroken chain of title for both the Note and Deed of Trust, and that because Appellees did not—and could not—offer proof to dispel with the mystery surrounding Aurora's existence at the time of the transfers, genuine issues of material fact remain and summary judgment dismissal was in appropriate.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

For U.S. Bank to recover on the Note, Texas law requires that it establish the following: (1) the note exists; (2) the obligor signed the note; (3) the obligee is entitled to enforce the note; and (4) a certain balance is due and owing under the note. *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App. 2012) (citing *Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 191 (Tex. App. 2011)). SGK and Katz challenge whether the third requirement is satisfied, that is, whether U.S. Bank was entitled to enforce the Note. Under the Texas Property Code, a party has standing to initiate a non-judicial foreclosure sale if the party is a mortgagee. *See* TEX. PROP. CODE ANN. §§ 51.002, 51.0025 (2017). A mortgagee includes, among others, the owner or holder of a security instrument, such as a deed of trust, or, "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *Id.* § 51.0001(4), (6). Even if a party does not have a recorded interest in a security instrument, the party may still have standing

to foreclose if the party is the holder or owner of a note secured by the instrument. This rule derives from the common law maxim, now codified in Texas, that "the mortgage follows the note." *See* TEX. BUS. & COM. CODE ANN. § 9.203(g) (2005) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien."); *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03–11–00429–CV, 2012 WL 1839357, at *4 (Tex. App. May 18, 2012, pet. denied) (mem.op.).

U.S. Bank maintains that it is a holder of the Note and is therefore legally entitled to enforce the mortgage. A holder is defined as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM. CODE ANN. § 1.201(b)(21)(A) (2015). In other words, "[a] person can become the holder of an instrument when the instrument is issued to that person; or he can become a holder by negotiation." *Leavings v. Mills,* 175 S.W.3d 301, 309 (Tex. App. 2004) (citing TEX. BUS. & COM. CODE ANN. § 3.201 cmt. 1 (2002)). For instruments made "payable to an identified person," that person becomes a "holder by negotiation" through a "transfer of possession of the instrument and its indorsement by the holder." TEX. BUS. & COM. CODE ANN. § 3.201(b) (2013). For the indorsement to be legally acceptable, it "must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to it as to become part of it," such as a firmly affixed allonge. *Leavings,* 175 S.W.3d at 309 (citing *Jernigan v. Bank One, Tex., N.A.*, 803 S.W.2d 774, 776 (Tex. App. 1991)).

The evidence submitted by U.S. Bank in support of its motion for summary judgment demonstrates that it is a legal holder of the Note under Texas law. Appended to the Note, of which U.S. Bank has possession, is an

allonge that contains a special endorsement in favor of U.S. Bank. U.S. Bank is therefore a holder of the Note.

This logic and conclusion treats as legally insignificant whether Aurora existed at the time of the transfers and therefore had legal capacity to either endorse the Note or assign the Deed to U.S. Bank. Assuming without holding that any of the Deed assignments from Greenpoint to Aurora to U.S. Bank were forgeries under Texas law, *see* TEX. PENAL CODE ANN. § 32.21(a)(1)(A) (defining "forge" as altering, making, completing, or executing any writing so that it purports to be the act of another who did not authorize that act), and acknowledging that a forgery makes a Deed assignment void, *see, e.g., Garcia v. Garza*, 311 S.W.3d 28, 44 (Tex. App. 2010), when the foreclosing party is the holder of the promissory note, any defects in the Deed assignment are irrelevant. *See Antony v. United Midwest Sav. Bank*, No. H-15-1062, 2016 WL 914975, at *3 (S.D. Tex. Mar. 10, 2016) ("Even if the assignment of the Deed of Trust from MERS to Flagstar was void, the record shows that Flagstar was the holder of the Note at foreclosure and had standing to foreclose on that basis."). That is, because Texas follows the common-law maxim that the mortgage follows the note, *see Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex. App. 1979), U.S. Bank was, as holder, entitled to foreclose on the property as holder of the note even if the assignment of the Deed of Trust was void. *See Kiggundu v. Mortg. Elec. Registration Sys. Inc.*, 469 F. App'x 330, 331–32 (5th Cir. 2012) ("It was sufficient for the Bank of New York to establish that it was in possession of the note; it was not required to show that the deed of trust had been assigned to it.").

Thus, U.S. Bank was authorized to foreclose on the property when SGK defaulted on the loan, and Appellants' attacks on the validity of the transfers of the Note and Deed of Trust from Greenpoint to U.S. Bank are irrelevant. *See, e.g., EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 541 (Tex.

App. 2016) (rejecting the argument that the assignee of an allegedly fraudulent deed of trust precludes the holder of the promissory note from foreclosing on the property). Because there remains no genuine dispute of material fact concerning U.S. Bank's authority to collect on the Note and enforce the Deed of Trust, we affirm the district court's grant of U.S. Bank's motion for summary judgment.

### C. Weinreb's Standing Challenge

On appeal, Weinreb argues that U.S. Bank lacked standing to recover any deficiency against him because it was not legally entitled to foreclose on the property to begin with. Weinreb's arguments mirror challenges asserted against U.S. Bank's attempts to initially foreclose on the property by SGK and Katz. That is, the crux of Weinreb's challenge concerns whether U.S. Bank is a valid holder and owner of the note. For the reasons supporting summary judgment dismissal of SGK and Katz's claims, we hold that the district court correctly concluded U.S. Bank is legally entitled to pursue a deficiency judgment against Weinreb as guarantor. Specifically, U.S. Bank's status as the holder of the Note authorizes it to foreclose on the collateral listed in the Deed of Trust and to exercise other incidental rights, including to recoup any outstanding balance on the Note. *See* TEX. PROP. CODE ANN. §§ 51.002, 51.0025 (2017). We therefore affirm the district court's denial of Weinreb's standing challenge.

### D. Dismissal of Weinreb's Fraudulent Misrepresentation Claim

Next, Weinreb challenges the district court's dismissal of his fraudulent misrepresentation claim. In response to U.S. Bank's third-party demand seeking a deficiency judgment, Weireb asserted, *inter alia*, that lawyers for U.S. Bank represented to him on a telephone call that they had found a buyer willing to purchase the foreclosed property for $2.8 million, which exceeded the outstanding loan balance. At the foreclosure sale, however, U.S. Bank sold the

No. 17-20130

property for less than the stated amount, resulting in a deficiency that Weinreb was jointly and severally liable for as a guarantor. On this basis, Weinreb asserted a fraudulent misrepresentation claim against U.S. Bank, arguing that he relied on U.S. Bank's representations about a potential purchaser to his detriment. The district court dismissed Weinreb's claim on U.S. Bank's Rule 12(b)(6) motion. On appeal, Weinreb argues that his counterclaim pleaded adequate facts that he relied on and acted upon U.S. Bank's representation that there would be no deficiency owed on the loan after the foreclosure sale.

We review de novo a district court's grant of a Rule 12(b)(6) motion, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citation omitted).

"A plaintiff asserting a claim for fraudulent misrepresentation must [allege] the following elements of the tort: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the plaintiff act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury." *Cent. Petroleum Ltd. v. Geoscience Resource Recovery, LLC*, No. 14-16-00933-cv, 2017 WL 6374694, at *13 (Tex. App. Dec. 14, 2017) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)).

We note that throughout his brief, Weinreb maintains that he adequately alleged a *negligent* misrepresentation claim, although his original

13

counterclaim asserts that U.S. Bank's attorneys *fraudulently* misrepresented the status of a potential third-party purchaser of the property. To the extent Weinreb's briefing exclusively asserts the viability of a negligent misrepresentation claim based on U.S. Bank's alleged breach of the duty to disclose, we will not consider that assertion for the first time on appeal. *See, e.g.*, *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.") (citation omitted). However, because the element disputed on appeal—whether Weinreb sustained any injury due to U.S. Bank's alleged misrepresentations—is present in both negligent and fraudulent misrepresentation claims, we will discuss the viability of Weinreb's claim.

Weinreb's counterclaim primarily contains conclusory allegations in support of his fraudulent misrepresentation claim, including that "U.S. Bank intended that Weinreb should act upon these representations" and "Weinreb acted in reliance on these representations." Such conclusory statements are insufficient to withstand a Rule 12(b)(6) motion. *Ashcroft*, 556 U.S. at 678. Weinreb's assertion that he suffered a loss because he did not attend the foreclosure sale or bid on the property does not satisfy the injury element. Weinreb did not allege that he initially intended to bid on the property before learning of a potential buyer and changed his position after speaking with U.S. Bank's representatives. Having failed to show that he was injured because of U.S. Bank's alleged representations, Weinreb's fraudulent representation claim was properly dismissed.

## E. U.S. Bank's Motion to Strike and SGK and Katz's Motion for Leave to Amend

We finally turn to arguments related to SGK and Katz's attempts to assert new claims. In response to U.S. Bank's counterclaim seeking a

deficiency judgment, SGK and Katz filed an answer and included three "additional claims" against U.S. Bank and Ocwen. Specifically, SGK and Katz asserted claims alleging (1) that U.S. Bank lacked standing because the original assignment of the Deed of Trust was void *ab initio*, (2) that U.S. Bank fraudulently foreclosed on the property and was "fraudulently attempting to collect a debt," and (3) that U.S. Bank committed common law fraud by misrepresenting to SGK and Katz that it had a buyer who would purchase the property for a price sufficient to satisfy the outstanding debt. Approximately two years later, U.S. Bank filed a motion to strike these claims from SGK and Katz's answer, which the district court granted without written reasons that same day. Notwithstanding, we hold that the district court properly struck SGK and Katz's claims. Federal Rule of Civil Procedure 15(a)(1) authorizes amendment of a pleading as of right within 21 days of serving it. Outside of that window, a party may amend a complaint with leave of court or the opposing party's consent. Fed. R. Civ. Pro. 15(a)(2). Although SGK and Katz asserted their additional claims in response to U.S. Bank's counterclaim, the claims effectively served as an attempt to amend their complaint. Because SGK and Katz did not follow the procedure set out in Rule 15 to amend their complaint, their additional claims were properly stricken on U.S. Bank's motion.

After the district court struck the additional claims from their answer, SGK and Katz filed a motion to amend their complaint to add the stricken claims. The district court orally denied this motion without reasons. "We review the district court's denial of leave to amend the complaint for abuse of discretion." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727–28 (5th Cir. 1998)). Federal Rule of Civil Procedure 15(a)(2) states that the district "court should freely give leave [to amend] when justice

so requires." "[T]he language of this rule 'evinces a bias in favor of granting leave to amend,'" and "[a] district court must possess a 'substantial reason' to deny a request." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted). A district court should "examine [ ] five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.* (citations omitted). An amendment is considered futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). Moreover, "[g]iven the policy of liberality behind Rule 15(a), it is apparent that when a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred." *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245–46 (5th Cir. 1997) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)).

The district court did not offer reasons for denying SGK and Katz's motion to amend their complaint. Notwithstanding our strong preference for explicit reasoning for denial of a motion to amend, "when the justification for the denial is 'readily apparent,' a failure to explain 'is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004)). We hold that, because SGK and Katz's amendment would have been futile, the district court properly denied their motion to amend. SGK and Katz's additional claims rested on the premise that U.S. Bank was not legally entitled to enforce the Deed of Trust because of alleged defects in the assignments, and that U.S. Bank's representative fraudulently represented that a potential buyer would purchase the property

for a price that would leave no deficiency. For the same reasons we affirmed the summary judgment dismissal of SGK and Katz's original claims and the dismissal of Weinreb's fraudulent misrepresentation claim, we hold that SGK and Katz's attempts to pursue these claims would have been futile, *see Stripling*, 234 F.3d at 872–73, and the district court did not abuse its discretion by disallowing the amendment.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.