# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2023

Lyle W. Cayce
Clerk

No. 21-20657

Arig, Incorporated,

*Plaintiff—Appellant*,

*versus*

Wilmington Savings Fund Society, FSB, *as Trustee of* Stanwich Mortgage Loan Trust F; Carrington Mortgage Services, L.L.C.; JP Morgan Chase Bank, N.A.; Mortgage Electronic Registration Systems, Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-2857

Before Richman, *Chief Judge*, and Elrod and Oldham, *Circuit Judges*.
Per Curiam:*

Plaintiff-Appellant, Arig Inc., appeals the district court's denial of its motion to remand. It alleges that, upon removal to federal court, Defendants-

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5. Judge Oldham concurs only in the judgment.

No. 21-20657

Appellees never established complete diversity of citizenship.  Because we hold that the district court had subject matter jurisdiction over the case based on complete diversity of the parties, we AFFIRM.

I

In 2008, a non-party to this case obtained a loan to purchase real property.  He secured his obligation to repay his loan by executing a deed of trust granting a lien to Mortgage Electronic Registration Systems, Inc., as nominee for SecurityNational and its successors and assigns.  MERS assigned the deed of trust to JPMorgan Chase Bank, N.A.  JPMorgan then assigned the deed of trust to Wilmington Savings Fund Society, FSB, as trustee of the Stanwich Mortgage Loan Trust F.  Carrington Mortgage Services, LLC services the loan.

In 2012, the homeowners' association of the non-party's property sued for past-due assessments, obtained a default judgment, and ultimately sold the property at a constable's sale.  Arig Inc. purchased the property, foreclosing the judgment on March 3, 2020.  Arig Inc. subsequently sued Defendants-Appellees in state court on July 10, 2020.[1]  Arig Inc. sought to quiet title to the property in its name and declare the security instrument void and unenforceable.

Thereafter, JPMorgan and MERS filed notices of removal to the Southern District of Texas, Houston Division, asserting diversity jurisdiction.  The remaining defendants at the time of removal (Wilmington Savings, SecurityNational, and Carrington Mortgage Services) consented to

---

[1] Arig Inc. named MERS, SecurityNational, JPMorgan Chase Bank, Carrington Mortgage Services, and Wilmington Savings Fund Society as defendants.  The district court voluntarily dismissed SecurityNational by agreement of the parties, and it is not part of this appeal.

No. 21-20657

removal. JPMorgan and MERS amended their removal notice to include additional information regarding Wilmington Savings's interest in the Stanwich Trust. Defendants-Appellees asserted that Wilmington Savings's citizenship, as trustee for the Stanwich Trust, controls for diversity purposes. Arig Inc. moved to remand, disputing that the Stanwich Trust's citizenship was properly established.

The district court denied Arig Inc.'s motion to remand, denied Arig Inc.'s amended motion to remand, and granted the Defendants-Appellees' motion to dismiss with prejudice. The district court also denied Arig Inc.'s request for leave to amend its second amended complaint. Arig Inc. appeals the district court's order denying its amended motion to remand.[2]

## II

We review a denial of a motion to remand *de novo*. *SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 939 (5th Cir. 2018). "Under 28 U.S.C. § 1332(a), diversity jurisdiction exists when there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000." *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 355 (5th Cir. 2017). "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) (alteration omitted) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). The party seeking the federal forum has the burden of establishing diversity jurisdiction. *Id.*

---

[2] Arig Inc. also appeals the grant of Defendants-Appellees' motion to dismiss and the denial of its motion for leave to amend its second amended complaint. Arig Inc.'s brief, however, assigns no error to the latter two actions. Accordingly, we do not address them.

No. 21-20657

Arig Inc. claims that the district court should have required the Defendants-Appellees to establish the citizenships of the Stanwich Trust's shareholders before determining that it had jurisdiction. Arig Inc. alleges that "Wilmington is not an active trustee." Put differently, despite naming Wilmington Savings as the sole defendant, Arig Inc. alleges that Wilmington Savings is a nominal or formal party and that the beneficial shareholders destroy diversity jurisdiction. Arig Inc. is correct that "[i]n determining diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'" *Bynane*, 866 F.3d at 356 (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)). However, relying on *Navarro* and our cases applying it, we determine that the district court did not err in concluding that diversity existed.

"Where a trustee has been sued or files suit in her own name, the only preliminary question a court must answer is whether the party is an active trustee whose control over the assets held in its name is real and substantial." *Id.* at 357 (internal quotation marks, alteration, and citation omitted). In *Navarro*, the seminal case on this topic, the Supreme Court determined that a group of trustees had the requisite degree of control because they held legal title to trust assets, were authorized to invest those assets for the benefit of shareholders and could sue and be sued in their capacity as trustees. 446 U.S. at 464. But there was nothing talismanic about that combination. In *Bynane*, we determined that a trustee had sufficient control citing only the facts that the trustee held legal title to trust assets and certificate holders had limited power over trust operations. 866 F.3d at 357. Similarly, in *SGK Props.*, it was enough that a trustee was "assignee of the trust's assets" and "holder of the Note and all rights due under it." 881 F.3d at 940.

The case law demonstrates, moreover, that limits on a trustee's authority do not necessarily disqualify the trustee from real party status. The

trustees in *Navarro* could be fired by shareholders and had to secure shareholders' permission before disposing of more than half the trust's assets. 466 U.S. at 465 n.14 (explaining that "these limited powers of intervention" do "not strip the trustees of the powers that make them real parties to the controversy for purposes of diversity jurisdiction"). And the trustee in *Bynane* was subject to certificateholders' "limited rights to vote or otherwise control the operation of the trust." 866 F.3d at 357.

We have little trouble determining that Wilmington Savings wields the necessary degree of control for real party status. The governing trust agreement expressly vests legal title to trust assets in the trustee.[3] Wilmington Savings is also empowered to convey and transfer mortgage assets with the consent of certificateholders or the trust manager; is assigned various recordkeeping responsibilities; is designated to serve as the mortgagee of record and to pay premiums on HUD mortgage assets; is authorized to perform duties in connection with finance transactions using trust assets, selling trust assets, and making liquidation distributions; and is responsible to establish accounts and receive, maintain, invest and disburse funds. Wilmington Savings is also empowered to bind the trust without the certificateholders' involvement, subject to a few enumerated exceptions. Yet these exceptions are analogous to the *Navarro* agreement's requirement that

---

[3] The trust agreement initially appears to limit Wilmington Savings's legal title to Mortgage Loans and REO property. Nevertheless, there is good reason to think that legal title to all assets is held by the trustee because this provision contains the caveat that all assets shall be vested in the trustee where required by law. And "for a trust to be a trust" in Texas, "the legal title must immediately pass to the trustee, and beneficial or equitable interest to the beneficiaries." *Bank One Tex. v. United States*, 157 F.3d 397, 400 (5th Cir. 1998) (quoting *Cutrer v. Cutrer*, 334 S.W.2d 599, 605 (Tex.Civ.App.—San Antonio 1960), *aff'd*, 345 S.W.2d 513 (Tex. 1961)).

No. 21-20657

trustees secure the permission of shareholders before disposing of more than half of the trust's assets in that they implicate the very existence of the trust.[4]

To be sure, the trust agreement does not cede unfettered control over trust assets to the trustee. It provides that Wilmington Savings may not convey or transfer certain categories of assets without the consent of the certificateholders or the trust manager, must often take direction from the trust manager, and can be removed by the certificateholders. All the same—as with shareholders' "limited powers of intervention" in *Navarro* and certificateholders' "limited rights to vote or otherwise control the operation of the trust" in *Bynane*—we hold that the various checks on Wilmington Savings's authority leave it with sufficiently significant control that the district court was correct to deem it the real party in interest.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[4] Wilmington Savings does not have unilateral decision-making authority over: (1) amending or dissolving the trust, (2) declaring bankruptcy on certificates, (3) merging the trust with other entities, (4) creating liens not permitted by the trust, (5) incurring debt not permitted by the trust, or (6) issuing new certificates not permitted by the trust.

6