IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-629

Filed 18 April 2023

Forsyth County, No. 20-CVS-436

PENNYMAC LOAN SERVICES, LLC, Plaintiff/Counterclaim Defendant,

v.

BRAD JOHNSON and ELCI WIJAYANINGSIH, Defendants/Counterclaim Plaintiffs
and Third-Party Plaintiffs,

v.

STANDARD GUARANTY INSURANCE COMPANY, ERIKA L. SANCHEZ, EFREN
SALDIVAR, and ASSURANT, INC., Third-Party Defendants.

Appeal by defendant-counterclaim plaintiff and third-party plaintiff from

order entered 27 May 2021 by Judge David L. Hall in Forsyth County Superior Court.

Heard in the Court of Appeals 22 March 2023.

*Brad R. Johnson, pro se defendant-appellant.*

*Womble Bond Dickinson (US) LLP, by B. Chad Ewing, for plaintiff-appellee.*

*Robinson, Bradshaw & Hinson, P.A., by Mark W. Merritt, and Drinker Biddle
& Reath, LLP, by W. Glenn Merten, for third-party defendants-appellees.*

FLOOD, Judge.

Brad R. Johnson ("Johnson") appeals from the 27 May 2021 Order dismissing his counterclaim.[1] On appeal, Johnson argues the trial court: (1) erred in concluding Johnson's Verified First Amended Counterclaim contained the operative counterclaim in this case; (2) erred in dismissing Johnson's breach of contract claim by concluding PennyMac Loan Services, LLC ("PennyMac") was allowed to assess Johnson a fee related to force-placed insurance;[2] and (3) abused its discretion in denying Johnson's Motion for Leave to Amend his counterclaim. After careful review, we discern no error or abuse of discretion by the trial court.

## I. Factual and Procedural Background

On 7 November 2008, Johnson purchased two developed lots ("Lots 16 and 18") in Oak Island, North Carolina. Johnson subsequently obtained home and flood insurance to protect the home situated on Lots 16 and 18. On 25 August 2012, Johnson purchased three undeveloped lots ("Lots 13, 15, and 17") adjacent to Lots 16 and 18. To avoid paying the required sewer fees on the undeveloped lots, Johnson combined all five lots into a single developed parcel of land (the "Property").

On 9 June 2013, Johnson submitted a Uniform Residential Loan Application (the "Mortgage Loan") to Weststar Mortgage, Inc. ("Weststar") for the purpose of

---

[1] Elci Wijayaningsih, Johnson's wife, was a named defendant in the original suit filed by PennyMac. Johnson filed this appeal seemingly on behalf of solely himself. Johnson refers only to himself throughout his brief, and PennyMac and Standard Guaranty likewise refer to Johnson as a singular person. This opinion will treat Johnson as the sole appellant.

[2] "Force-Placed insurance" is "hazard insurance obtained by a servicer on behalf of the owner or assignee of a mortgage loan that insures the property securing such loan." 12 C.F.R. § 1-24.37(a)(1).

refinancing the Property. In addition to the Mortgage Loan, Johnson continued purchasing home and flood insurance for the Property and instructed Weststar to establish an escrow account so Johnson could pay the insurance and property taxes on a monthly basis. After the Mortgage Loan was submitted, Weststar ordered an appraisal of the Property. The appraisal invoice sent to Johnson specifically noted the appraisal was of "Lots 13, 15, 16, 17, and 18." Following the appraisal, Johnson's Mortgage Loan was approved, and Johnson was sent a Deed of Trust (the "Deed"). The Deed described the Property as "all of Lots 13, 15, and 17 . . ."; notably, it omitted Lots 16 and 18.

On 6 August 2013, PennyMac purchased the Mortgage Loan from Weststar. PennyMac maintained the escrow account established by Weststar and used it to pay the insurance coverage for the house. On 20 September 2017, Johnson requested PennyMac stop paying for home and flood insurance, claiming PennyMac had a lien on the vacant Lots 13, 15, and 17, not Lots 16 and 18, and therefore did not have an insurable interest in Lots 16 and 18. PennyMac approved Johnson's request to close the escrow account but explained the terms of the Mortgage Loan required Johnson to pay home and flood insurance for the Property. The relevant portion of the loan states:

> **Property Insurance.** Borrower shall keep the improvements now existing or hereby erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to earthquakes and

floods, for which Lender requires insurance.

In September 2018, a representative for PennyMac allegedly told Johnson via telephone he would not be required to pay home insurance if he separated the Property back into the original parcels. On 22 March 2019, Johnson recorded an Instrument of Separation separating Lots 13, 15, and 17 from Lots 16 and 18.

On 10 May 2019, PennyMac sent Johnson a notice that his home insurance expired. PennyMac reminded Johnson that home insurance was required on the Property and requested Johnson provide proof of insurance. PennyMac further explained if Johnson did not provide proof of insurance, PennyMac would purchase insurance for the Property and charge Johnson. On 14 June 2019, PennyMac sent Johnson a second reminder to purchase home insurance. Once again, PennyMac explained to Johnson that failure to insure the Property would result in PennyMac purchasing force-placed insurance for the Property, which could be more expensive than an insurance policy Johnson purchased himself. Johnson refused to purchase insurance.

On 16 June 2019, PennyMac sent Johnson a certificate of coverage placement detailing the force-placed insurance coverage PennyMac purchased for the Property. The insurance was purchased through Standard Guaranty Insurance Company ("Standard Guaranty").

On 20 August 2019, Johnson filed an insurance complaint with the North Carolina Commissioner of Banks (the "Commissioner of Banks") and the North

Carolina Department of Insurance alleging PennyMac's force-placed insurance was improper because PennyMac did not have an insurable interest in Lots 16 and 18. In response to this complaint, PennyMac sent a letter to the Commissioner of Banks explaining that, even though the Deed described only Lots 13, 15, and 17, the Mortgage Loan application submitted by Johnson indicated that the purpose of the Mortgage Loan was to refinance the then-existing loan encumbering the house on Lots 16 and 18.[3] PennyMac further noted it made a title insurance claim to resolve the alleged drafting error in the Deed. PennyMac represented to the Commissioner of Banks that the force-placed insurance would remain in effect, but PennyMac would not seek insurance premium payments from Johnson until the issue was resolved. PennyMac continued insuring the Property at its own expense.

On 23 January 2020, PennyMac filed a Complaint against Johnson in Forsyth County District Court to reform the Deed to include all property and improvements described in the appraisal report.[4] PennyMac alleged the Deed's omittance of Lots 16 and 18 was a "mutual mistake, inadvertence[,] or mistake of the draftsman."

---

[3] The Record did not include Johnson's Mortgage Loan application. The letter PennyMac sent Johnson on 19 September 2019 is the best evidence we have of the contents of the Mortgage Loan application. According to PennyMac, a copy of the Mortgage Loan application was included with the letter PennyMac sent the Commissioner of Banks.

[4] We note for clarity purposes, PennyMac's Complaint, Johnson's second Motion to Amend, and Standard Guaranty's Motion to Dismiss were filed in Forsyth County District Court whereas Standard Guaranty's Opposition to Motion for Leave to Amend, PennyMac's Motion to Dismiss, and the Order were filed in Forsyth County Superior Court.

On 21 February 2020, Johnson filed a *pro se* answer with counterclaim[5] against PennyMac for common law breach of contract alleging PennyMac breached the Mortgage Loan by force-placing home insurance on Lots 13, 15, and 17. Johnson filed claims against PennyMac and Standard Guaranty for violations of the Racketeering Influence and Corruption Organization Act ("RICO") under 18 U.S.C. §§ 1961–68. Johnson filed additional claims against PennyMac for violations of the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692, and breach of contract accompanied by fraudulent acts.

Also on 21 February 2020, Johnson filed a Notice of Removal to the United States District Court for the Middle District of North Carolina based on federal question and diversity jurisdiction. On 6 April 2020, Johnson filed a Verified First Amended Counterclaim ("FAC") in the middle district.

On 21 September 2020, Johnson filed for Leave to File a Verified Second Amended Counterclaim. On 3 March 2021, Judge Osteen remanded the case to the Forsyth County District Court for lack of subject matter jurisdiction. Judge Osteen further denied all other outstanding motions, including the motion to amend, as moot.

On 2 April 2021, Standard Guaranty filed a Motion to Dismiss Johnson's counterclaim in Forsyth County District Court. On 5 April 2021, PennyMac likewise

---

[5] The original answer with counterclaim filed by Johnson was omitted from the Record. Because we do not have any evidence to the contrary, we assume the claims asserted in the First Amended Counterclaim were the same claims asserted in the original answer with counterclaim.

filed a Motion to Dismiss Johnson's counterclaim. In response to the motions to dismiss, Johnson filed a Motion for Leave to Amend his original counterclaim. A hearing was held on the matter on 26 April 2021. On 27 May 2021, Judge Hall entered the Order on the Motions to Dismiss and the Motion to Amend, granting the motions to dismiss and denying Johnson's Motion to Amend based on futility.

On 10 March 2022, PennyMac voluntarily dismissed its Complaint to reform the deed. On 5 April 2022, Johnson filed timely notice of appeal to this Court.

## II. Jurisdiction

This Court has jurisdiction to hear this appeal as a final order from a superior court pursuant to N.C. Gen. Stat. § 7A-27(b) (2021).

## III. Analysis

### A. Amended Pleading Pursuant to Fed. R. Civ. P. 15

First, Johnson challenges Conclusion of Law 1, which states the FAC contains the operative counterclaim in this case. Specifically, Johnson argues the FAC is "void and a legal nullity" because he failed to meet the requirements for amended and supplemental pleadings set forth in Rule 15 of the Federal Rules of Civil Procedure. We disagree.

This Court reviews a trial court's conclusions of law *de novo*. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019). "[W]e do not defer to the conclusions of [the trial c]ourt but conduct our own independent inquiry . . . ." *Id.* at 332, 828 S.E.2d at 471.

The Federal Rules of Civil Procedure allow a party to amend its pleading "once as a matter of course within 21 days after serving it, or . . . [i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15. "[U]ntimely amended pleading[s] served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought, and when it does not appear that any of the parties [would have been] prejudiced by allowing the change." *Straub v. Desa Indus., Inc.*, 88 F.R.D. 6, 8 (M.D. Pa. 1980); *see also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 448 (M.D.N.C. 2005) (allowing the defendant to amend its complaint where the court would have granted leave to amend the counterclaim and the plaintiff was not prejudiced).

Here, Johnson did not file the FAC within twenty-one days of the filing of the original complaint, nor did he obtain leave from the court or written consent from the parties prior to filing. *See* Fed. R. Civ. P. 15(a). Based on the liberalness with which this rule is generally applied and the reliance on the FAC in the order remanding the case, however, there is no reason for us to presume the middle district would have denied a motion to amend had it been properly filed. *See SGK Props., L.L.C. v. U.S. Bank Nat'l Assoc.*, 881 F.3d 933, 944 (5th Cir. 2018) ("[T]he language of this rule evinces a bias in favor of granting leave to amend[.]" (citation and internal quotation marks omitted)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Further, there is no indication PennyMac or Standard

Guaranty would have been prejudiced because both filed individual motions for extension of time to file answers to the amended counterclaim, neither party objected to the FAC, and both have treated the FAC as the operative pleading throughout the life of this case.

Moreover, Johnson is judicially estopped from asserting a legal position inconsistent with one taken previously in the litigation. The doctrine of judicial estoppel prevents a litigant from "intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Price v. Price*, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005) (citation and internal quotation marks omitted). Johnson cannot rely on the FAC while litigating in federal court and then claim the FAC is "void and a legal nullity" when it becomes more convenient while litigating in the state court. *See id.* at 191, 609 S.E.2d at 452.

We therefore find the FAC was properly introduced and contains the operative counterclaim because leave to amend would have likely been granted by the middle district, it did not cause prejudice to PennyMac or Standard Guaranty, and the doctrine of judicial estoppel prevents Johnson's argument. *See Straub*, 88 F.R.D. at 8; *see also Price*, 169 N.C. App. at 191, 609 S.E.2d at 452.

## B. Breach of Contract

Next, Johnson argues the trial court erred in Conclusion of Law 12 by dismissing his breach of contract claim. Specifically, Johnson argues the force-placed hazard insurance was not reasonable, and therefore breached the property insurance

term set forth in the Mortgage Loan. We disagree.

"This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003).

For a *prima facie* breach of contract claim, a party must show: "(1) existence of a valid contract and (2) a breach of the terms of [the] contract." *Wells Fargo Ins. Servs. USA, Inc v. Link*, 372 N.C. 260, 276, 827 S.E.2d 458, 472 (citation omitted) (alteration in original).

Here, it is undisputed the Mortgage Loan is a valid contract between Johnson and PennyMac. Instead, Johnson seemingly argues Penny Mac breached the Mortgage Loan contract by imposing charges related to force-placed insurance when the terms of the Mortgage Loan required insurance only on improvements on the Property, of which there are none on Lots 13, 15, and 17. PennyMac argued, and the trial court agreed, that the force-placed insurance was reasonable under C.F.R. § 1024.37(b) because PennyMac had a reasonable basis for believing insurance was required under the terms of the Mortgage Loan. Initially, we note Johnson confusingly argues the regulation was misapplied by the trial court, but then subsequently argues the regulation is not applicable to this case because PennyMac did not have an insurable interest in Lots 13, 15 and 17.

Under federal regulations, "[a] servicer may not assess on a borrower a

premium charge or fee related to force-placed insurance unless the servicer *has a reasonable basis* to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." 12 C.F.R. § 1024.37(b) (2021) (emphasis added). The regulation specifies when a servicer may assess force-placed insurance. Contrary to Johnson's argument, it is not a question of whether PennyMac had an insurable interest; rather, it is a question of whether it had a reasonable basis to believe Johnson was not complying with the terms of the Mortgage Loan contract. *See id.*

Conclusion of Law 12 states:

> To the extent that they are characterized as a breach of contract claim, Johnson's allegations still fail to state a claim. Pursuant to 12 C.F.R. [§] 1024.37(b), PennyMac was allowed to assess Johnson a fee related to force-placed insurance because it had a reasonable basis to believe that Johnson failed to comply with his mortgage loan contract's requirement to maintain hazard insurance. In making this ruling, this [c]ourt does not prejudge the outcome of the underlying deed reformation action.

PennyMac had a reasonable basis to believe home insurance was required for the Property because: (1) Johnson applied for a *residential* loan through Weststar; (2) Weststar conducted an appraisal of "Lots 13, 15, 16, 17, and 18"; (3) Johnson instructed Weststar to create an escrow account to pay taxes and *home* insurance on the Property; (4) the terms of the Mortgage Loan required insurance on the Property; and (5) Johnson paid *home* and flood insurance on the Property until 2017. Based on these facts, it is reasonable that PennyMac believed the Mortgage Loan required

home insurance on the Property and that Johnson was not in compliance with this requirement. *See* C.F.R. § 1024.37(b).

Moreover, after Johnson filed his insurance complaint with the Commissioner of Banks, PennyMac refunded Johnson the money it had charged him for the force-placed insurance. As of the date of the hearing, PennyMac continued to pay for insurance on the Property at its own expense. It is unlikely PennyMac would continue to purchase home insurance for Johnson at its own expense if it did not reasonably believe the Property required insurance.

Thus, we find PennyMac had a reasonable basis to believe the terms of the Mortgage Loan contract required home insurance on the Property, and the trial court's dismissal of the breach of contract claim was, therefore, correct. *See* C.F.R. § 1024.37(b); *see also Leary*, 157 N.C. App. at 400, 580 S.E.2d at 4.

### C. Denial of Johnson's Motion to Amend the Counterclaim

Finally, Johnson argues the trial court abused its discretion by denying his Motion for Leave to Amend the counterclaim. Johnson attempts to style this Motion as his *first* amended counterclaim even though he had already filed the original FAC in the middle district. Having previously concluded the FAC is the operative counterclaim in this case, Johnson's Motion to Amend filed in Forsyth County Superior Court was Johnson's second, not first, Motion to Amend.

#### 1. Amendment by Right

First, Johnson argues the trial court abused its discretion in denying his second

- 12 -

Motion to Amend because the North Carolina removal statute allowed him to file a first amended counterclaim by right. As previously discussed, Johnson was permitted to file the FAC in the middle district as he would have been permitted to do in the state court had the case not been removed to the middle district, and this argument is, therefore, without merit. *See* N.C. R. Civ. P. 12(a)(2) (on remand from a federal court a party may amend a pleading in the state court if they "would have been permitted . . . to file" such pleadings had the case not been removed).

## 2. Futility of Amendment

Next, Johnson argues the trial court abused its discretion in Conclusion of Law 13 by concluding Johnson's second Motion for Leave to Amend the counterclaim was futile. Additionally, Johnson argues the trial court abused its discretion in conclusions of law 2, 10, 11, and 12 which concluded Johnson's RICO, FDCPA, breach of contract with fraudulent act, and breach of contract claims were futile. We find no abuse of discretion.

Where a party has already amended their pleading once as a matter of course, as Johnson did here, the North Carolina Rules of Civil Procedure allow a party to amend their pleading "only by leave of court or by written consent of the adverse part[ies]; and leave shall be freely granted when justice so requires." N.C. R. Civ. P. 15(a).

Here, PennyMac and Standard Guaranty did not consent to the second amended counterclaim; thus, Johnson could file the second amended counterclaim

only by leave of the court.

> [O]ur standard of review for motions to amend pleadings requires a showing that the trial court abused its discretion. Denying a motion to amend without any justifying reason appearing for the denial is an abuse of discretion. However, proper reasons for denying a motion to amend include undue delay by the moving party and unfair prejudice to the nonmoving party. Other reasons that would justify a denial are bad faith, futility of amendment, and repeated failure to cure defects by previous amendments.

*Williams v. Owens*, 211 N.C. App. 393, 394, 712 S.E.2d 359, 360 (2011) (citation omitted). "The trial court's ruling is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Brown v. N.C. Div. of Motor Vehicles*, 155 N.C. App. 436, 438–39, 573 S.E.2d 246, 248 (2002) (citation and internal quotation marks omitted); *see also Greenshields, Inc. v. Travelers Prop. Cas. Co. of Am.*, 245 N.C. App. 25, 31, 781 S.E.2d 840, 844 (2016) ("A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason.") (citation omitted); *Bailey v. Handee Hugo's, Inc.*, 173 N.C. App. 723, 727, 620 S.E.2d 312, 315 (2005) (holding a trial court's denial of a motion to amend was not an abuse of discretion where it stated proper reasons for denying the motion).

### a. RICO Claim

Here, the trial court denied Johnson's Motion to Amend his RICO claim based on the futility of the amendment. Conclusion of Law 2 provides:

> [Johnson's] RICO claim fails to state a claim upon which relief can be granted pursuant to N.C. R. Civ. P. 12(b)(6) and is not pled with the particularity required by N.C. R. Civ. P. 9(b). To state a claim for a violation of RICO, 18 § 1962(c), [Johnson] must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). As outlined below, the FAC as well as the proposed amended counterclaims and third party claims fail to state essential elements of a RICO claim, and in fact contain allegations that affirmatively show that the required elements of a RICO claim are not present in this case and cannot be alleged.

The trial court, in conclusions of law 3–9, meticulously explained why each element of Johnson's RICO claim fails, and why those failings could not be cured by an amended pleading. Therefore, it cannot be said, and Johnson does not adequately argue, the trial court's decision was not reasoned or was an abuse of discretion; accordingly, our review of Johnson's RICO claim ends. *See Brown*, 155 N.C. App. at 438–39, 573 S.E.2d at 248.

### b. FDCPA

Johnson also challenges Conclusion of Law 10, which dismissed his FDCPA claim against PennyMac.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e) (2021). A "debt collector" is any person who regularly collects or attempts to collect debts owed another. *See* 15 U.S.C. § 1692a(6) (2021). The United States Supreme Court held a debt purchaser "may indeed collect debts for its own account without triggering the statutory definition" set forth in 15

U.S.C. § 1962a(6). *Henson v. Santander Cons. USA Inc.*, 582 U.S. 79, 83, 137 S. Ct. 1718, 1721–22, 198 L. Ed. 2d 177, 181 (2017).

Conclusion of Law 10 states:

> To plead a FDCPA claim against PennyMac, Johnson "must allege facts sufficient to show that PennyMac is a debt collector." The FDCPA claim fails because Johnson has pled facts sufficient to show that PennyMac is not a debt collector. Johnson has specifically alleged that PennyMac is the holder of the debt that he alleges it is attempting to collect, and, therefore, it cannot be a debt collector. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721–22 (2017), *quoting* 15 U.S.C. 1692a(6).

Here, PennyMac is considered a debt purchaser because they purchased Johnson's Mortgage Loan from Weststar. Accordingly, PennyMac collected on a debt Johnson owed it for the cost of the force-placed insurance. PennyMac did not collect a debt owed to another, and is not, therefore, a debt collector as defined by the FDCPA. *See id.* at 83, 137 S. Ct. at 1721–22, 198 L. Ed. 2d at 181.

Thus, we conclude the trial court did not abuse its discretion by concluding Johnson's claim for FDCPA was futile. *See Brown*, 155 N.C. App. at 438–39, 573 S.E.2d at 248.

### c. Breach of Contract with Fraudulent Act

Next, Johnson argues the trial court abused its discretion when it concluded he failed to plead breach of contract with fraudulent act. Johnson argues he adequately plead the elements of a unilateral contract and breach of said unilateral contract with a fraudulent act. We disagree.

Conclusion of Law 11 states:

> The breach of contact with fraudulent act claim fails because North Carolina law governs Johnson's claim and does not recognize a claim for breach of contract with fraudulent act. *Curtis* v. *Cafe Enterprises, Inc.*, 2016 WL 6916786 *10 (W.D.N.C. Nov. 11, 2016). To the extent that South Carolina law governed Johnson's breach of contract with fraudulent act claim, that claim would still fail because the FAC fails to plead a fraudulent act.

As the trial court points out, breach of contract accompanied by fraudulent acts arises under South Carolina law and is not recognized by North Carolina law. *See Curtis v. Café Enterprises, Inc.*, 2016 WL 6916786 *10 (W.D.N.C. Nov. 11, 2016). Even if we were to recognize this claim, it still fails because Johnson did not adequately plead a fraudulent act. It is unclear from Johnson's FAC or his brief what fraudulent act he alleges PennyMac committed. Assuming, *arguendo,* that the fraudulent act was the force-placed insurance, we have already concluded PennyMac had a reasonable basis for instituting the force-placed insurance; therefore, it was not fraudulent. *See* C.F.R. § 1024.37(b).

Thus, we conclude the trial court did not abuse its discretion by concluding Johnson's claim for breach of contract with fraudulent act was futile. *See Brown*, 155 N.C. App. at 438–39, 573 S.E.2d at 248.

### d. Breach of Contract

Finally, Johnson argues the trial court abused its discretion in dismissing the breach of contract claim as futile. For the reasons explained above, PennyMac had a

reasonable basis to believe home insurance was required under the terms of the Mortgage Loan.  *See* C.F.R. § 1024.37(b).

Therefore, the trial court did not abuse its discretion by concluding Johnson's claim for breach of contract was futile. *See Brown*, 155 N.C. App. at 438–39, 573 S.E.2d at 248.

## IV. Conclusion

We hold the trial court did not err in granting PennyMac and Standard Guaranty's Motion to Dismiss or abuse its discretion in denying Johnson's Motion to Amend.

AFFIRMED.

Judges TYSON and GRIFFIN concur.